**GOVERNMENT GUARANTEE FUND, et al., Plaintiffs**

**v.**

**HYATT CORPORATION, Defendant**

Civ. No. 1995-49

**HYATT CORPORATION, Plaintiff**

**v.**

**35 ACRES ASSOCIATES, Defendant**

Civ. No. 1995-68

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 10, 1996

WARREN B. COLE, ESQ., (HUNTER, COLIANNI, COLE & TURNER), St. Croix, U.S.V.I., MICHAEL M. BAYLSON, ESQ., EDWARD G. BIESTER, III, ESQ., (DUANE, MORRIS & HECKSCHER), Philadelphia, Pennsylvania, *for the Skopbank Parties*

JOHN ZEBEDEE, ESQ., (HYMES & ZEBEDEE), St. Thomas, U.S.V.I., JAMES RENARD, ESQ., WILLIAM A. BREWER, ESQ., ROBERT CUMMINS, ESQ., (BICKEL & BREWER), Chicago, Illinois, *for Hyatt Corporation*

MOORE, *Chief Judge*

## OPINION

These consolidated oases came on for hearing on March 6, 1996. In *Government Guarantee Fund v. Hyatt Corporation*, 1996 U.S. Dist. LEXIS 4898, Civil No. 1995-49 ("GGF suit"), the Court granted 35 Acres Associates' ("35 Acres") motion for partial summary judgment and denied without prejudice Hyatt Corporation's ("Hyatt") motion to dismiss the first amended complaint. In *Hyatt Corporation v. 35 Acres Associates*, Civil No. 1995-68 ("Hyatt suit"), the Court denied Hyatt's Rule 59 motion to amend the Court's Order of January 8, 1996, and its Rule 15 motion to file a third amended complaint. This Memorandum further elucidates those rulings from the bench.

## PROCEDURAL HISTORY

Because familiarity with the underlying facts of this dispute is assumed,[1] it is only necessary to recite a brief statement of the procedural posture of this case. These cases, which grew out of the foreclosure and sale of the hotel known as the Hyatt Regency So. John ("Hotel"), were consolidated for trial on June 21, 1995. At a hearing on November 17, 1995, the Court took under advisement 35 Acres' motion to dismiss the second amended complaint in the Hyatt suit (Civil No. 1995-68) and denied without prejudice

---

[1] *See Hyatt Corp. v. 35 Acres Assoc.*, Civil No. 1995-68, slip op. at 2-4 (Jan. 8, 1996) (memorandum opinion granting 35 Acres' motion to dismiss).

Hyatt's motion to strike and dismiss the GGF parties'[2] first amended complaint in the GGF suit (Civil No. 1995-49). Hyatt renewed its motion to strike and dismiss on December 22, 1995.

Meanwhile, on January 8, 1996, the Court granted 35 Acres' motion to dismiss the second amended complaint in the Hyatt suit. That same day, 35 Acres moved for partial summary judgment against Hyatt in the GGF Suit, arguing that it was entitled to possession of the Hotel as a matter of law. Finally, on January 23, Hyatt moved to amend the Court's Order of January 8 to permit the filing of a third amended complaint in the Hyatt suit.

## DISCUSSION

1. *Hyatt's Motion to Dismiss the First Amended Complaint in the GGF Suit*

In its consolidated motion, Hyatt asserts that all or part of the first amended complaint should be stricken or dismissed on the following grounds:

1. the ninety-eight page, first amended complaint fails to comply with FED.R.CIV.P. 8(e)(1);
2. Counts ten (unjust enrichment), twelve (breach of warranty), thirteen (breach of duty of good faith and fair dealing) fifteen (conversion), and sixteen (breach of common law duties) should be stricken as duplicative and redundant of Count eleven (breach of contract) under FED.R.CIV.P. 12(f);
3. the fraud and negligent misrepresentation claims (Counts six and seven respectively) should be dismissed because they lack the requisite specificity required by FED.R.CIV.P. 9(b);
4. Count one (ejectment) should be dismissed pursuant to FED.R.CIV.P. 12(b)(1) because the Court lacks subject matter jurisdiction over that claim;
5. the public nuisance and tortious interference claims (Counts four and fourteen respectively) should be dismissed under FED.R.CIV.P. 12(b)(6) for failure to state a claim on which relief can be granted;

---

[2]Government Guarantee Fund of Finland, Skopbank, 35 Acres Associates, 12 Acres Associates, and Benefori Oy are referred to collectively as the "GGF parties."

6. plaintiffs Government Guarantee Fund of Finland, 12 Acres, and Benefori Oy should be dismissed from the suit because they lack standing to assert claims against Hyatt; and

7. plaintiff's equitable claims in Counts two (replevin), seventeen (constructive trust), and eighteen (accounting) should be dismissed because plaintiff have an adequate remedy at law.

The applicable standards for evaluating Hyatt's consolidated motion are varied, and we review them before addressing the merits of the motion.

■ Fed.R.Civ.P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) requires pleading averments to be "simple, concise, and direct." A complaint which fails to comply with Rule 8(a) and (e) may be dismissed with prejudice pursuant to Fed.R.Civ.P. 41(b).[3] But because dismissal with prejudice is a harsh remedy, courts are reluctant to impose this sanction, preferring other less drastic alternatives instead. *See, e.g., Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339 (9th Cir. 1970). While the first amended complaint is hardly a paragon of pithiness, it is quite comprehensible and provides enough information to allow Hyatt to frame a responsive pleading. Under the liberal pleading standards of Rule 8, it is more than sufficient to inform Hyatt of the nature of the claims asserted.

■ ■ Rule 12(f) allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although courts have considerable discretion in weighing Rule 12(f) motions, these motions are disfavored and will generally be denied unless the material in question bears no possible relation to the matter at issue or the moving party shows that it will be prejudiced by its inclusion. *Abrams v. Lightolier, Inc.*, 702 F. Supp. 509, 511 (D.N.J. 1988); *Great*

---

[3] Rule 41(b) provides in pertinent part:

For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

*West Life Assurance Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) Rule 12(f) must be read in conjunction with the liberal pleading standards of Rule 8 in general and Rule 8(e)(2) in particular.[4] By its terms, Rule 8(e)(2) allows parties to plead inconsistent and conflicting theories of recovery. *See also* FED.R.CIV.P. 18(a). At this stage of the litigation, the GGF parties are not required to elect between tort or contract, law or equity. Once discovery has crystallized the issues for trial, Hyatt may revisit its objections to the GGF parties' claims in the form of a summary judgment motion. By the same reasoning, plaintiffs' assertion of both legal and equitable claims does not require that their claims be stricken or dismissed at this stage.

■ Although Rule 9(b) requires particularity in pleading "the circumstances constituting fraud or mistake," as the Court of Appeals for the Third Circuit has cautioned, "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298 AT 407 (1969)). All that is required by Rule 9(b) is that plaintiffs "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211, 84 L. Ed. 2d 327, 105 S. Ct. 1179 (1985). This, plaintiffs have plainly done.

Among other things, the GGF parties allege that Hyatt failed to disclose relevant financial information regarding calculation and distribution of Hotel Cash Flow; made numerous false and misleading statements regarding the completion of the Renovation Program; and generally concealed the true financial condition of

---

[4]Rule 8(e)(2) provides in part:

A party may also state as many separate claims or defenses as he has regardless of consistence and whether based on legal, equitable, or maritime grounds.

the Hotel.[5] Even though these allegations of misconduct are sprinkled throughout the complaint, "plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegation of fraud." *Id.*

 Hyatt's next contention, that this Court is without jurisdiction to hear Count one (ejectment), is without merit. Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408-09 (3d Cir.) (citing *Bell v. Hood,* 327 U.S. 678, 682, 90 L. Ed. 939, 66 S. Ct. 773 (1946)), cert. denied, 501 U.S. 1222 (1991). Hyatt incorrectly relies on the case of *Estate Thomas Mall, Inc. v. Territorial Court,* 923 F.2d 258, 264 (3d Cir.), *cert. denied,* 502 U.S. 808, 116 L. Ed. 2d 28, 112 S. Ct. 50 (1991), for the proposition that this Court cannot entertain a claim to recover possession of real property. *Estate Thomas Mall* certainly clarified the respective jurisdictional boundaries of the Territorial Court and this Court, but nothing in that decision limits the power of this Court, sitting in diversity, to adjudicate claims based on territorial law. Although the Territorial Court has **original** — as opposed to exclusive — jurisdiction over all local civil actions,[6] in the absence of a specific legislative directive to the contrary, such claims are within the diversity jurisdiction of this Court.[7]

Hyatt's arguments for the dismissal of Counts four and fourteen (public nuisance and tortious interference claims respectively) must also fail. In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true the well-pleaded allegations in the complaint. *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3d Cir. 1989). A complaint should not be dismissed for

---

[5] *See* First Amended Complaint at ¶¶ 291-298.

[6] *Virgin Islands Hous. Auth. v. Coastal Gen. Contr. Services Corp.,* 27 F.3d 911, 914 (3d Cir. 1994).

[7] Hyatt mistakenly assumes that Count one is based on the Virgin Islands Forcible Entry and Detainer ("FED") statute, V.I. CODE ANN. tit. 28, § 782 (1976). In fact, plaintiffs have sued under the Virgin Islands Real Property Recovery ("RPR") statute 28 V.I.C. §§ 281-294. While section 782(b) of the FED statute gives the Territorial Court exclusive jurisdiction over disputes where the amount of rent or property in controversy is below $ 500, the RPR statute contains no such restriction. Even if plaintiffs had sued under the FED statute, moreover, the amount in controversy is far above the $ 500 threshold.

failure to state a claim unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the . . . claim." *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988); *Mingolla v. Minnesota Mining and Manufacturing Co.*, 893 F. Supp. 499, 503 (D.V.I. 1995). Because a 12(b)(6) motion tests the sufficiency of the allegation in the complaint, the plaintiff "is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A WRIGHT & MILLER, § 1357 at 340 (2d ed. 1990)). Finally, when evaluating a 12(b)(6) motion the court must be mindful of the liberal pleading practice permitted by Rule 8(a) and (f).

■ Under this liberal standard, Counts four and fourteen of the first amended complaint clearly withstand Hyatt's 12(b)(6) motion. Count four alleges that Hyatt has unreasonably interfered with public health and safety by refusing to produce information on compliance with environmental regulations. First Amended Complaint at ¶¶ 70-98, 274. This allegation is sufficient to state a claim for public nuisance under the RESTATEMENT (SECOND) OF TORTS § 821B (1979).[8]

In Count fourteen the GGF parties assert that Hyatt intentionally and improperly interfered with prospective contracts of sale between them and third parties. Amended Complaint at ¶ 381. Virgin Islands law recognizes a cause of action for interference with a prospective contractual relation. RESTATEMENT (SECOND) OF TORTS § 766B. The elements of a claim for intentional interference with prospective contractual relation are: 1) a prospective contractual relationship; 2) an intent to harm the plaintiff by preventing the relationship from occurring; 3) the absence of privilege or justifi-

---

[8] Section 821B provides in part:

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> . . .
>
> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation . . . .

The RESTATEMENTS govern in the absence of local law to the contrary. 1 V.I. CODE ANN. tit. 1, § 4.

cation on the part of the defendant; and 4) the occasioning of actual damage resulting from the defendant's conduct. See *United States Healthcare v. Blue Cross of Gr. Philadelphia*, 898 F.2d 914, 925 (3d Cir.) (construing § 766 of the RESTATEMENTS), *cert. denied,* 498 U.S. 816 (1990). The GGF parties have alleged: 1) prospective contracts for the sale of the Hotel and the Villas;[9] 2) that Hyatt has intentionally interfered with these prospective contracts;[10] 3) that Hyatt's actions were unjustified;[11] and 4) that they have suffered a pecuniary 1033.[12] Accordingly, they have properly pled the tort of intentional interference with prospective contractual relation under Virgin Islands law.

■ Hyatt's final argument, that certain of the plaintiffs lack standing to sue, is premature. Discovery is needed to accurately establish the relationship among the plaintiffs and between Hyatt and the GGF parties.

For the foregoing reasons, Hyatt's consolidated motion to strike and dismiss the GGF parties' first amended complaint will be denied without prejudice.

### 2. *35 Acres' Motion for Partial Summary Judgment in the GGF Suit*

■ In the GGF suit, 35 Acres seeks a determination that its agency relationship with Hyatt has been terminated as a matter of law, and Hyatt must leave the premises. It is undisputed that 35 Acres is the owner of the Hotel and successor in interest to Great Cruz Bay Development Co., Inc. ("Great Cruz") under the Management Agreement of March 9, 1990 ("Management Agreement"). It is equally undisputed that 35 Acres gave notice of termination of the agency by letter of March 21, 1995, and again on June 8, 1995. By its own admission, Hyatt has no proprietary interests in the *res* itself, [13] nor is there any claim that the agency was created for the benefit of a third party.

Applying the controlling law to the undisputed facts of this case establishes that the Management Agreement created a revocable

---

[9] First Amended Complaint at ¶¶ 380-81.

[10] *Id.* at ¶¶ 14-26, 70-98, 155, 381.

[11] *Id.* at ¶ 383.

[12] *Id.* at ¶¶ 97-93, 382.

[13] Hyatt's Response to Motion for Partial Summary Judgment at 23.

agency that ended once 35 Acres gave notice of its termination. As terminated agent, Hyatt must leave the premises and surrender control of the Hotel Co 35 Acres, its rightful owner.

The standards for the grant of a motion for summary judgment are by now familiar. Summary judgment is appropriate only where the materials of record "show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); The Court must resolve all reasonable doubts in favor of the nonmoving party, but once the moving party has made a properly supported motion for summary judgment, the nonmovant must come forward with specific facts to show a genuine issue of material fact for trial. FED.R.CIV.P. 56(e); *Anderson,* 477 U.S. at 247-48. A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 247-48. As the United States Supreme Court observed: "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

The RESTATEMENT (SECOND) OF AGENCY (1958) is the governing law in this area. As we explained only recently, the general rule of agency is that a principal may terminate the agency at any time, even though doing So may violate a contract. *Hyatt Corp. v. 35 Acres Assoc.,* Civil No. 1995-68, slip op. at 5 (D.V.I. Jan. 8, 1996). "The only exception to the rule that principals may terminate an agency relationship at any time is when the authority granted to the agent is 'a power given as security.'"[14] *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY §§ 138, 139). "'A power given as security[15] is one held for the benefit of a person other than the power giver [i.e.

---

[14] The terms "power coupled with an interest" or "agency coupled with an interest" are also used to describe this exception. *See Hyatt v. 35 Acres,* Civil No. 1995-68, slip op. at 6 n.2.

[15] Section 138 of the Restatement (Second) of Agency defines a power given as a security as:

a power to affect the legal relations of another, created in the form of an agency authority, but held for the benefit of the power holder or a third person and given to secure the performance of a duty or to protect a title, either legal or equitable, such power being given when the duty or title is created or given for consideration.

principal] .' . . . *If the agent has an interest in the exercise of the power only because of the compensation he is entitled to for exercising it, then such power is not given as security and is revocable." Id.* at 6 (quoting RESTATEMENT (SECOND) OF AGENCY § 138, Comment b.) (emphasis added).

An indispensable feature of a power given as security, is that the agent have a proprietary interest in the *res* or subject matter of the agency which is independent of the agency relationship itself. Professor Williston's comments on this subject are instructive:

> In order that a power may be irrevocable because it is coupled with an interest, *it is necessary that the interest be in the subject matter of the power* and not in the proceeds which will arise from the exercise of the power . . . .

> The person clothed with the authority must derive a present or future interest *in the subject itself* on which the power is to be exercised . . In short, the test is:

> Does the agent have an interest or estate in the subject matter of the agency *independent of the power conferred,* or does the interest or estate accrue by or after the exercise of the power conferred?

> If the former, it is an agency coupled with an interest . . . if the latter, it is not.

2 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 280 at 300-02 (1959) (emphasis added).[16] Thus, the agency relationship itself does not create the interest; the agency merely serves to protect the separately granted or created interest when the two are coupled.

---

[16] *See also Taylor v. Burns,* 203 U.S. 120, 126, 51 L. Ed. 116, 27 S. Ct. 40 (1906) ("By the phrase 'coupled with an interest,' is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate"); *Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.,* 19 Cal. App. 4th 615, 23 Cal. Rptr. 2d 555, 561 (Cal. App. 1993) ("An essential element of an irrevocable power is that there be a 'coexisting interest in the subject of the agency.'"); *Woolley v. Embassy Suites, Inc.,* 227 Cal. App. 3d 1520, 278 Cal. Rptr. 719, 726 (Cal. App. 1991) ("For an agency to be coupled with an interest the agent must have a 'specific, present and coexisting' beneficial interest in the subject matter of the agency.").

As we indicated three months ago, "for Hyatt to claim that its agency authority is such a power given as security, it must have alleged that the agreements were entered into for [its] benefit, either to protect a property interest of Hyatt's *in the hotel* or to secure the performance of some duty or obligation owed to Hyatt." (emphasis added). *Hyatt v. 35 Acres*, slip op. at 9. Because Hyatt failed to allege "that the agreements were entered into for the benfit of Hyatt, either to protect a property interest of Hyatt's in the hotel or to secure the performance of some duty or obligation owed to Hyatt," we dismissed Count one of Hyatt's second amended complaint. *Id.*[17]

Hyatt now argues that its "property interest" in the Hotel consists of its trademarks, copyrights, trade secrets, proprietary reservation system, and other intellectual property used to operate the Hotel. It further contends that the Management Agreement was specifically created for Hyatt to safeguard these interests. Finally, Hyatt claims that the Management Agreement created a "joint enterprise" between it and Great Cruz.

■■■ We begin our analysis, as we must, by looking at the terms of the Management Agreement which controls the relationship between the parties. The plain language of the Management Agreement allowed the owner to terminate Hyatt's agency if certain performance criteria were not met. Management Agreement, § 4.5 at 32. And even though Hyatt was given the right to extinguish the termination by curing performance deficiencies within a prescribed time, [18] this conditional termination provision is strong proof that the parties never intend to create an irrevocable agency. Furthermore, Hyatt's claim of some sort of joint

---

[17] Based on this ruling, the GGF parties argue that the law of the case doctrine precludes Hyatt from denying the revocability of the agency. "The doctrine of the law of the case dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issue in subsequent stages in the litigation.'" *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting *Devex Corp. v. General Motors Corp.*, 857 F.2d 197, 199 (3d Cir. 1988)). Unlike our ruling today, our Memorandum and Order of January 8, merely set out the requirements for pleading an irrevocable agency and was not a definitive ruling on the merits of Hyatt's claim. It would be inappropriate, therefore, to apply the law of the case doctrine to that January 8 ruling.

[18] Management Agreement, § 4.5(B) at 37. Hyatt could exercise its right to cure only three times. *Id.* If Hyatt failed to cure within 90 days or had no more rights to cure, the Management Agreement would automatically terminate. *Id.* at 38.

ventureship or enterprise is foreclosed by the unambiguous language of that document. Section 3.8 of the Management Agreement provides:

> Nothing in this Agreement contained shall constitute, or be construed to create, a partnership, joint venture or lease between Owner and Hyatt with respect to the Hotel.

*Id.* at 24. Although Hyatt shared in the profits of the Hotel, it did not share in the losses. In fact, the Management Agreement was structured so that Hyatt would receive a management fee even when the Hotel suffered a loss.[19]

Though it may be probative of the existence of an irrevocable agency, the intent of the parties is not dispositive, however. *See* RESTATEMENT (SECOND) OF AGENCY § 138, comment b. As one California court found, the parties may intend to create an irrevocable agency but fail to do so. *Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*, 19 Cal. App. 4th 615, 23 Cal. Rptr. 2d 555, 561 (Cal. App. 1993). Conversely, the parties may intend a revocable agency yet inadvertently create a power given as a security. After examining the character of the agency in this case, however, we are satisfied that the Management Agreement did not in fact award Hyatt a power given as security.

■ Hyatt's interest in the protection of its intellectual property is simply not the type of interest in the Hotel — the subject matter of the agency — needed to create an irrevocable agency. The evidence shows that Hyatt's trademarks, trade names, copyrights, trade secrets, and proprietary services are not a part of the Hotel "independent of the power conferred" by the Management Agreement. The Management Agreement itself mandates the use of Hyatt's name. Management Agreement, § 13 at 66. Hyatt's proprietary interest in its intellectual property predated the Management Agreement and, indeed, the Hotel itself and presumably are protected by applicable copyright, trademark, and contract law. The use of the Hyatt name by Great Cruz was in the nature of a license, and was not an indicia of ownership. Also, it can reason-

---

[19] Section 4.2.1(a) guaranteed Hyatt a management fee of at least 1.5% of the gross receipts for the fiscal year. *Id.* at 25.

ably be inferred that the management fee and other compensation negotiated by Hyatt included a component for the use of its intellectual property. Since the Management Agreement allowed Hyatt to remove its name from the Hotel if it could no longer be run as a "first class" resort,[20] there can be no argument that the Hyatt name is inextricably linked with the Hotel. More importantly, as the GGF parties concede, once the agency has been terminated, 35 Acres may no longer use Hyatt's name or other intellectual property to operate or manage the Hotel. Absent the Management Agreement, then, Hyatt has no interest in the Hotel and need not associate its name or property with it.[21]

The plain language of the Management Agreement shows, and the undisputed facts of this case definitively establish, that the agency was created for the benefit of the owner, not Hyatt, and that Hyatt's sole interest in the Management Agreement is its right to compensation. As such, the Management Agreement was a personal services contract which cannot be specifically enforced. RESTATEMENT OF THE LAW (SECOND) CONTRACTS, § 367(1) (1981).

The rationale for refusing to enforce a personal services contract was eloquently stated in *Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 278 Cal. Rptr. 719 (Cal. App. 1991), and is worth repeating:

> There are a variety of reasons why courts are loathe to order specific performance of personal services contracts. Such an order would impose upon the court the prodigious if not impossible task of passing judgment on the quality of perfor-

---

[20] Management Agreement, § 13 at 67.

[21] Like Hyatt, the defendant in *Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 278 Cal. Rptr. 719 (Cal. App. 1991), argued that its interest in the success and prestige of its trade name was sufficient to create an irrevocable agency. The Court squarely rejected that claim, noting that "the 'interest' Embassy has in seeing the hotels succeed so as to enhance its reputation and prestige is not the type of . . . interest necessary to constitute an agency coupled with an interest." *Id.* at 726. Hyatt attempts to distinguish *Woolley* by pointing to the fact that the use of the Embassy Suites trade name in that case was secured by a separate franchise agreement. In our view, this fact militates against the presence of an irrevocable agency here. If the use of Hyatt's intellectual property were protected by a franchise agreement then the Owner potentially could use Hyatt's trademarks and trade names even after the agency ended. Arguably, a separate clause linking the franchise agreement to the agency relationship might be needed to protect the agent's interest. Here, termination of the Management Agreement cancels the owner's right to use Hyatt's intellectual property.

mance. It would also run contrary to the Thirteenth Amendment's prohibition against involuntary servitude. Courts wish to avoid the friction and social costs which result when the parties are reunited in a relationship that has already failed, especially where the services involve mutual confidence and the exercise of discretionary authority. Finally, it is impractical to require judicial oversight of a contract which calls for special knowledge, skill, or ability.

*Id.* at 727 (citations omitted).

At the hearing on this matter, the Court admonished both parties to meet and work in concert to plan the smooth transition in the management of the Hotel. We do so again here, hopeful that the parties can work out the details of the transition without the need for persistent judicial involvement. Once the parties have negotiated the logistics of the transition, the Court will ratify it by separate order.

3. *Hyatt's Rule 59 Motion to Amend in the Hyatt suit*

In its Rule 15 and 59 motions, Hyatt asks this Court to amend its order of January 8 to allow it to file a third amended complaint. Since we find that Hyatt's claims against the GGF parties properly should be asserted as a compulsory counterclaim in the GGF suit, these motions will be denied.

Rule 13(a) defines a compulsory counterclaim as one that:

arises out of the transaction or occurance that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a). "The operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). A claim should be asserted as a compulsory counterclaim if it involves: "(1) many of the same factual issues; (2) the same factual and legal issues; and (3) offshoots of the same basic controversy between the parties." *Id.* Allowing Hyatt to file a third amended complaint in the Hyatt suit would needlessly "involve a substantial duplication of effort and time by the parties and the courts." *Id.* (quoting *Great Lakes Rubber*

271

*Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)). Both cases grew out of the foreclosure and sale of the Hotel; both require an interpretation of the same Management Agreement; both share common fact witnesses; and both require the fact finder to decide whether Hyatt properly performed its duties under the Management Agreement. Accordingly, Hyatt shall have ten days from the entry of the Order accompanying this Memorandum to answer the first amended complaint in the GGF suit and assert any defenses and compulsory counterclaims thereto.

DATED this 10th day of April, 1996.

### ORDER

And now this 10th day of April, 1996, for the reasons set forth from the bench at the March 6, 1996 hearing and amplified in the Memorandum of even date, it is hereby

ORDERED that Hyatt Corporation's motion to dismiss the first amended complaint in *Government Guarantee Fund v. Hyatt Corp.*, 1996 U.S. Dist. LEXIS 4898, Civil No. 1995-49, is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that 35 Acres Associates' motion for partial summary judgment in *Government Guarantee Fund v. Hyatt Corp.*, 1996 U.S. Dist. LEXIS 4898, Civil No. 1995-49, is GRANTED. Both parties shall work together to effect a smooth transition in the management and operation of the Hotel; and it is further

ORDERED that Hyatt Corporation's motion to amend the Court's Order of January 8, 1996 is DENIED. Hyatt shall have ten (10) days from the entry of this Order to answer the first amended complaint in *Government Guarantee Fund v. Hyatt Corp.*, 1996 U.S. Dist. LEXIS 4898, Civil No. 1995-49 and assert any defenses and compulsory counterclaims thereto; and it is hereby

ORDERED that the case of *Hyatt Corp. v. 35 Acres Assoc.*, Civil No. 1995-68, is CLOSED. Any pleading having to do with an appeal of this case shall be captioned and filed solely in that case. All other pleadings filed hereafter shall contain only the caption of *Government Guarantee Fund v. Hyatt Corp.*, Civil No. 1995-49.

Hyatt Corporation's motion to dismiss first amended complaint DENIED WITHOUT PREJUDICE. 35 Acres Associates' motion for

partial summary judgment (Civil No. 1995-49) GRANTED. Hyatt Corporation's motion to amend Court's Order of January 8, 1996, DENIED. Case (Civil No. 1995-68) CLOSED.