**GOVERNMENT GUARANTEE FUND OF THE REPUBLIC OF
FINLAND, SAASTOPANKKIEN KESKUS-OSAKE-PANKKI
(SKOPBANK), 35 ACRES ASSOCIATES, 12 ACRES
ASSOCIATES, and BENEFORI OY, Plaintiffs**

**v.**

**HYATT CORP., Defendant**

Civ. No. 1995-49

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 19, 1997

186

Warren B. Cole, (Hunter, Colianni, Cole & Turner), St. Croix, U.S.V.I., and Michael Baylson, (Duane, Morris & Heckscher), Philadelphia, PA, *for Plaintiff Government Guarantee Fund of the Republic of Finland*

John Zebedee, (Hymes & Zebedee), St. Thomas, U.S.V.I., and James Renard and John Sopuch, (Bickel & Brewer), Dallas, TX, *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

A hearing was held on June 19, 1997 on the plaintiffs' ["Skopbank Parties"] motion for partial summary judgment on Count XI of their first amended complaint, defendant's ["Hyatt"] motion for leave to file an amended answer and counterclaim, and plaintiffs' appeal from discovery orders entered by Magistrate Judge Geoffrey Barnard.[1]

In its motion for partial summary judgment on Count XI the Skopbank Parties note that this Court has held as a matter of law that "Hyatt was in breach of its obligations to remit payments of

[1] The factual and procedural background of this case can be found in previous decisions issued by this Court. *See, e.g. Government Guarantee Fund v. Hyatt Corp.*, 960 F. Supp. 931 (D.C.V.I. 1997); *Government Guarantee Fund v. Hyatt Corp.*, 955 F. Supp. 441 (D.C.V.I. 1997); *Hyatt Corp. v. 35 Acres Assoc.*, No. Civ. 1995-49, 1995-68, 1996 WL 165008 (D.C.V.I. Jan. 8, 1996); *Government Guarantee Fund v. Hyatt Corp.*, 34 V.I. 257, 166 F.R.D. 321 (D.C.V.I.), aff'd, 95 F.3d 291 (3d Cir.1996).

base debt to Skopbank. Hyatt's arguments why it was not obligated to make such payments are contradicted by the express terms of the relevant agreements." *Government Guarantee Fund v. Hyatt Corp.*, 960 F. Supp. 931, 951 (D.C.V.I. 1997). Count XI alleges breach of contract against Hyatt for numerous reasons, and states in relevant part, "Hyatt breached its obligation under Sections 4.6, 4.2.1, and 4.2.3 and Annex 1 of the Management Agreement and the Letter Agreement to pay Base Debt to Skopbank Parties." (First Amended Complaint, ¶ 350.) Accordingly, Skopbank Parties' motion is granted with respect to Hyatt's breach for failure to pay Base Debt.

Hyatt seeks to amend its counterclaim to assert additional claims of reformation of the Management Agreement and Subordination Agreement, fraud and a claim under the Racketeer Influenced and Corrupt Organizations Act ["RICO"]. Hyatt also seeks to add affirmative defenses of mutual mistake, unilateral mistake with knowledge, fraud, recoupment and offset. In its memorandum in support of its motion to amend, Hyatt alleged that it was not until this Court's opinion dated April 4, 1997 granting the Skopbank Parties' motion for partial summary judgment on Hyatt's counterclaim for breach of contract, that the parties to the Management Agreement "realized that their understanding of the Management Agreement was apparently mistaken . . . ." (Mot. Hyatt Corp. Leave of Court to File Amended Answer and Counterclaim ["Motion to Amend"] at 2.) That assertion is absurd.

The issue of the meaning and effect of the relevant sections of the Management Agreement and the Subordination Agreement was hotly contested, fully litigated and ultimately resolved by this Court on April 4, 1997. Hyatt's reformation count is nothing more than conjuring up a new theory based upon the same set of facts that have been before the Court and known to Hyatt over the course of two years of litigation. This Court clearly stated in its April 4, 1997 opinion:

> The Court finds that the March 1990 Agreements are unambiguous and simply do not support Hyatt's interpretation. While Section 4.3 did accord Hyatt the right to withhold payments of Owner's Remittance Amounts if

188

Hyatt determined that it needed to keep the money in reserve to pay for the renovation and operating expenses, Section 4.3 did not bestow such a right to withhold the payment of Base Debt. Base Debt and Owner's Remittance Amounts are clearly separate categories of payment obligation under Section 4.6. They were separately defined, and they were accorded a separate priority of payment. The Management Agreement unambiguously provided that, in the event of positive Hotel Cash Flow, the owner was to receive a payment of Base Debt after Hyatt paid itself its Incentive Fee. (Management Agreement, § 4.6.) The hotel generated positive Hotel Cash Flow for the years 1992, 1993, 1994 and 1995, and Hyatt paid itself Incentive Fees for these years. Hyatt was therefore obligated under the Management Agreement and Letter Agreement to make Base Debt payments to Skopbank for those same years of positive Hotel Cash Flow. Hyatt's failure to make any such payments of Base Debt whatsoever was a material breach, which thoroughly justified Hyatt's termination after notice and opportunity to cure . . . .

960 F. Supp. at 944. Hyatt simply cannot now allege a mutual mistake theory after having failed to persuade the Court of its interpretation of the agreements which would support that theory.

■ Hyatt also seeks to add another rendition of its fraud allegation. Hyatt asserts that it "did not become aware of its fraud claim until discovery and investigation revealed that Skopbank had no intention of ever recognizing or honoring the Management Agreement or Hyatt's rights to manage the Hotel upon a foreclosure or subsequent sale to a third party." (Motion to Amend, at 2.) However, Hyatt asserted these same allegations in its opposition to Skopbank's motion for partial summary judgment on Hyatt's breach of contract counterclaims under the theory that Skopbank had breached a duty of good faith and fair dealing. The Court noted:

Hyatt claims that before entering into the March 1990 Agreements, Skopbank formed an intention to take over

the hotel and sell it to a third party, and thus needed to hire a professional management company to improve the hotel's financial performance to make the hotel more marketable. (Brief at 27.) However, it is irrelevant that Skopbank had discussed plans concerning making the hotel more profitable and thus more marketable to potential buyers by finding a successful management company to run the hotel. Nor is it relevant that Skopbank in 1989 was "aiming for an agreement, which is easy to cancel in connection with selling the property . . ." or that Skopbank observed that a "long term management agreement on a fee basis may reduce a circle of possible investors." (Response at 96 -97.) The fact of the matter is that when Hyatt entered into the agreements with Skopbank, Hyatt successfully negotiated terms which provided that Hyatt could only be terminated if it was in default, and which provided that Hyatt could continue to manage the hotel even after a foreclosure sale so long as Hyatt was not in default. As the Court of Appeals for the Third Circuit observed, "Hyatt's seeking of this subordination agreement indicates impressive foresight on its part. . . ." 95 F.3d at 307. However, the undisputed evidence demonstrates that Hyatt defaulted on its obligations under the March 1990 agreements and thus was properly terminated. Such a termination cannot be construed as a breach of the implied duty of good faith and fair dealing.

960 F. Supp. at 949. Hyatt is simply using these same facts to infer that Skopbank engaged in some sort of fraudulent conduct. The Court has already decided that the conduct does not amount to any breach of a duty of good faith and fair dealing, *a fortori* it could not support Hyatt's "new" theory of fraud or any RICO claim.

In sum, it should be noted that Hyatt has had up to eight opportunities to plead its claims against Skopbank. These pleadings have been the subject of numerous orders and opinions from this Court and the United States Court of Appeals for the Third Circuit. *See, supra*, n. 1. This Court agrees with the characterization

190

by the Skopbank Parties of Hyatt's repeated attempts at amending its pleadings.

> Hyatt arrogantly treats each Hearing before the Court as if it were nothing more than a dress-rehearsal for the next and each Adjudication by the Court in thorough, detailed and obviously time-consuming Opinions and Orders as if it was nothing more than a preliminary draft proposed by the Court for Hyatt's review and comments, or the brief of another litigant, to be analyzed and somehow distinguished.

(Response of Skopbank Parties' in Opp. To Mot. By Hyatt for Leave of Court to File Amended Answer and Counterclaim, at 2.) Hyatt's motion for leave of court to amend its answer and counterclaim is denied. As it appears to this Court that this latest motion was filed simply to unreasonably and vexatiously hinder and delay these proceedings in violation of 28 U.S.C. § 1927, Hyatt is ordered to show cause why sanctions for filing such a motion would not be warranted.

■ Skopbank Parties appeal from discovery orders entered by the Magistrate Judge which precluded them from seeking tax return information from Hyatt. As this case is now at the stage where discovery on damages is appropriate, Skopbank is entitled to any tax returns submitted by Hyatt to the government of the Virgin Islands. Any orders entered by the Magistrate Judge to the contrary are vacated.

■ Finally, Skopbank Parties seek a clarification of the April 4, 1997 memorandum. The Court noted that because all of Hyatt's counterclaims were dismissed, there was no longer any need for a jury trial. The Skopbank Parties point out, however, that the Foreign Sovereign Immunities Act only precludes a jury from deciding claims asserted against a foreign sovereign. Because Skopbank Parties are the plaintiffs in this action, Hyatt has the right to a jury trial. *See Allendale Mutual Insurance Co. v. Bull Data Systems*, No. 91 C 6103, 1995 WL 5895 (N.D.Ill. Jan. 4, 1995)(rejecting the defendant foreign state's request for a non-jury trial on its counterclaims and noting that "the FSIA and the authority explor-

191

ing its parameters and requirements are all premised on the existence of a suit against a foreign state . . ."); *see also National Iranian Oil Co. v. Ashland Oil Inc.*, 716 F. Supp. 268, 270 (S.D.Miss. 1989)(ruling that there should be a jury trial on the claims brought by the foreign state).

An appropriate order is attached.

ENTERED this 19th day of June, 1997.

### ORDER

For the reasons set forth from the bench at the hearing and in the accompanying memorandum, it is hereby

ORDERED that plaintiffs' motion for partial summary judgment on Count XI of their First Amended Complaint is GRANTED insofar as Hyatt has breached its obligations to make base debt payments; and it is further

ORDERED that defendant's motion for leave to file an amended answer and counterclaim is DENIED; and it is further

ORDERED that plaintiffs are entitled to discovery of Hyatt's tax return information submitted to the government of the Virgin Islands; and it is further

ORDERED that the memorandum of April 4, 1997 is clarified on the issue of a jury trial as Hyatt has the right to a jury trial; and it is further

ORDERED that Hyatt shall include in its July 15, 1997 response to the Skopbank Parties' Motion for Contempt and Sanctions its explanation for why its motion to amend its counterclaim and answer does not warrant sanctions.

ENTERED this 19th day of June, 1997.