**MICHAEL V. STANTON, Plaintiff**
**v.**
**HYATT CORPORATION, Defendant**

Civil No. 98-106

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 29, 1999

THOMAS H. HART III, Alkon, Rhea & Hart, *for plaintiff*

STEVEN A. BERGER, BERGER, Stern & Webb, *for plaintiff*

JOHN ZEBEDEE, Hymes & Zebedee, *for defendant*

CLAUDE D. MONTGOMERY, Philips, Lytle, Hitchcock, Blaine & Huber, *for defendant*

MOORE, *Chief Judge*

### MEMORANDUM

Pending before the Court is defendant Hyatt Corporation's motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively, to transfer it to an appropriate district.

275

## INTRODUCTION

This matter stems from the long and turbulent relationship which culminated in *Government Guarantee Fund of The Republic of Finland, Saastapankkien Keskus-osake-pankki (Skopbank), 35 Acres Associates, 12 Acres Associates and Benefori Oy* [the "Skopbank Parties"] *v. Hyatt Corporation,* Civil No. 1995-49 ["Skopbank v. Hyatt" or "GGF v. Hyatt"]. The history of the case, which settled on the eve of trial in May of this year, can be traced through a series of opinions beginning with *GGF v. Hyatt,* 1996 U.S. Dist. LEXIS 21722, 1996 WL 165008 (D.V.I. Jan. 8, 1996) and continuing with 34 V.I. 257, 166 F.R.D. 321 (D.V.I. 1996), 34 V.I. 274, 167 F.R.D. 399 (D.V.I. 1996), 35 V.I. 483, 95 F.3d 291 (3d Cir. 1996), 35 V.I. 356, 955 F. Supp. 441 (D.V.I. 1997), 36 V.I. 295, 960 F. Supp. 931 (D.V.I. 1997), 1997 WL 449952 (D.V.I. June 19, 1997), 38 V.I. 227, 177 F.R.D. 336 (D.V.I. 1997), 38 V.I. 431, 5 F. Supp. 2d 324 (D.V.I. 1998), and 182 F.R.D. 182 (D.V.I. 1998). A parallel foreclosure action has run concurrently. *See, e.g., Skopbank v. Allen-Williams Corp.,* 38 V.I. 431, 5 F. Supp. 2d 324 (D.V.I. 1998). During this period, Hyatt filed suit against the Skopbank Parties, which this Court dismissed as duplicative of Hyatt's counterclaims. *See Hyatt v. Skopbank,* 1996 U.S. Dist. LEXIS 21722, 1996 WL 165008 (D.V.I. Jan. 8, 1996).

Hyatt managed a resort on the island of St. John, U.S. Virgin Islands ["the hotel"] from March of 1990 until removed from the hotel pursuant to this Court's order in September of 1996, following an affirmance by the United States Court of Appeals for the Third Circuit. By the end of 1988, Skopbank, a Finnish banking corporation, had loaned over 100 million dollars to the former owner, Great Cruz Bay Development Co. ["Great Cruz"], to develop the hotel. After Great Cruz consistently had difficulty keeping up with the mortgage payments to Skopbank, Skopbank agreed in 1990 to lend an additional $10.5 million to Great Cruz, but insisted that someone else manage the hotel. As a result, a series of agreements were signed in March of 1990 ["March 1990 Agreements"], primarily between Hyatt and Great Cruz, with Skopbank in the background on all and signatory to some. Under the March 1990 Agreements, Hyatt had the right to manage the operation of the hotel for thirty years, for which it would pay itself a base fee plus an incentive fee. Hyatt agreed to pay Skopbank any

sums due to Great Cruz as owner. Skopbank agreed to recognize Hyatt as the manager of the hotel in the event Skopbank foreclosed its mortgage with Great Cruz, but only so long as Hyatt was not in default of its obligations under the March 1990 Agreements.

When Great Cruz continued in default despite Hyatt's management, Skopbank foreclosed on its mortgage with Great Cruz and forced the hotel to judicial sale on March 20, 1995. The hotel was purchased by 35 Acres, a Virgin Islands general partnership of two Finnish corporations wholly owned by Skopbank. 35 Acres terminated the agreements with Hyatt on the next day and ordered it to leave the hotel premises. The Skopbank Parties sought a declaratory judgment that Hyatt breached the March 1990 Agreements, alleging various claims in tort and contract. *See generally GGF v. Hyatt*, 166 F.R.D. 321. Hyatt counterclaimed, among other things, that the Skopbank Parties had breached their obligations under the March 1990 Agreements and owed Hyatt millions of dollars in damages.

On May 3, 1996, this Court summarily adjudged that the March 1990 Agreements created an ordinary agency relationship with Hyatt which had been terminated as a matter of law and that Hyatt must vacate the hotel and turn over possession to 35 Acres. Hyatt, contending that it held an irrevocable agency, refused to leave the hotel pending its appeal to the United States Court of Appeals for the Third Circuit. Hyatt only vacated the hotel premises in September of 1996 after the Court of Appeals affirmed this Court in all respects. *See GGF v. Hyatt Corp.*, 34 V.I. 257, 166 F.R.D. 321 (D.V.I. 1996), *aff'd*, 35 V.I. 483, 95 F.3d 291 (3d Cir. 1996). The litigation continued for another year and a half, but ultimately settled the day before a jury was empaneled.

In the meantime, however, Hyatt filed an action against Michael V. Stanton ["Stanton"] on May 29, 1996, in the Supreme Court of the State of New York, County of New York. The New York complaint alleged that Stanton, a "Senior Vice President of non-party co-conspirator Skopbank," "orchestrated a sham transaction in order to avoid millions of dollars of obligations" by having 35 Acres acquire title to the hotel. The next day, Hyatt's press agent issued a press release which appeared in, *inter alia*, the *National Law Journal*, which reported

Chicago-based Hyatt Corp. has hired Dallas' Bickel & Brewer in a suit filed May 29 in New York State's mid-level Supreme Court against Michael V. Stanton, a vice president of Helsinki Finland's Skopbank. The suit alleges he helped create 35 Acres, a shell corporation, to deflect lawsuits from Skopbank after 35 Acres bought a Hyatt-managed U.S. Virgin Islands resort and fired Hyatt, violating a management contract.

(Def.'s Mot. at 4.)

The New York court dismissed the action on June 23, 1997, finding that

[p]atently the Virgin Islands cause of action is nearly identical to the case at bar and the claims were asserted there before this action commenced. Thus there is no reason why this court should permit the action to be litigated here when Hyatt has already decided to litigate its claims in the Virgin Islands
. . . There is no reason why this action should be available simply as a threat over the head of a corporate employee.

(Unreported Decision at 3, Exh. 3 to Am. Compl.)

This suit was filed May 27, 1998, alleging libel per se, malicious prosecution, and abuse of process. The motion to dismiss was filed June 25, 1998.

## ANALYSIS

### Jurisdiction

The motion to dismiss is premised on a lack of personal jurisdiction over Hyatt. Stanton argues that this Court has both specific and general jurisdiction over Hyatt; Hyatt argues that it has neither. Because this Court finds that it has specific jurisdiction over Hyatt for the acts complained of, it need not reach the question of its general jurisdiction.

Specific jurisdiction is "personal jurisdiction exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). Federal Rule of Civil Procedure 4(e) directs this Court to examine whether Virgin Islands law would permit a Virgin Islands court to exercise jurisdiction over Hyatt. The Virgin Islands Code provides for "Personal jurisdiction based upon conduct":

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
> (1) transacting any business in this territory;
> (2) contracting to supply services or things in this territory;
> (3) causing tortious injury by an act or omission in this territory;
> (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
> (5) having an interest in, using, or possessing real property in this territory; or
>   . . .
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

V.I. CODE ANN. title 5, § 4903. A mere perusal of the history of the conflict between Hyatt and Stanton's former employer demonstrates the Court's jurisdiction under section 4903.

▪ At the time that Hyatt filed its suit against Stanton, Hyatt had been ordered to vacate the hotel on St. John, but refused to comply until the Court of Appeals affirmed this Court's decision in all respects. The Skopbank parties alleged in *GGF v. Hyatt* that until Hyatt vacated the property, and perhaps even after, Hyatt was intimately involved in Skopbank's attempts to find a buyer for the hotel property. Skopbank raised material questions of fact regarding Hyatt's alleged attempt to sabotage the sale in an effort perhaps to purchase the property itself. Although none of these issues were resolved because the lawsuit settled, Hyatt never denied that it

279

was a potential purchaser. From what is now before the Court, a trier of fact could determine that Hyatt sued Mr. Stanton in New York and then publicly broadcast the claims asserted against him in an attempt to enhance its position in the competition to buy the property. At the time it filed the New York lawsuit against Mr. Stanton, Hyatt was still in possession of and operating the hotel while it appealed this Court's "eviction" order. The Court therefore finds that Hyatt's filing of the New York suit and widespread publication of it was inextricably intertwined in Hyatt's transacting business here, as well as its interest in, use, or possession of real property in this territory, *i.e.*, the hotel. See 5 V.I.C. § 4903(1) and (5). The same factors fully satisfy the Constitutional requirement that "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *Helicopteros*, 466 U.S. at 414). Hyatt filed the New York case to affect Hyatt's destiny within this jurisdiction.

### Venue

The general venue provision of the United States Code provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391. Further, in the interest of justice, a district court may transfer a case to another district where it originally might have been brought "for the convenience of the parties and witnesses," 28 U.S.C. § 1404(a), or if in the wrong district, 28 U.S.C. § 1406.

The general venue provision of section 1391(a) applies to this civil action founded upon diversity. Since Hyatt does not reside in

the Virgin Islands, and since this action could be brought in another district, the basis for laying venue in the District of the Virgin Islands would be that a substantial part of the events complained of occurred in this jurisdiction. If venue is proper, the Court may nevertheless transfer the case under section 1404(a). Even if the case is improperly filed here, the Court may still transfer it to New York under section 1406.

In deciding a motion to transfer under section 1404(a), the Court is granted broad discretion. Certain district courts in the past required the same showing in a motion to transfer under section 1404(a) as for application of the doctrine of forum non conveniens. Section 1404(a) however was "intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 99 L. Ed. 789, 75 S. Ct. 544 (1955).

A list of factors to be considered would include those that are the "private interests of the litigant" which are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). "Public interest" factors must also be considered.

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of

the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508-09. Additionally, as referenced above, this Court will consider the "fairness factors" of *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1990), as paraphrased in *Burger King*:

Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial systems's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

471 U.S. at 476-77.

Considering the totality of the circumstances surrounding this case, the Court makes the following findings. Plaintiff is a New York resident complaining of acts which occurred primarily in New York, namely the filing of a suit in New York court and the dissemination of a press release by a New York press agent. The main witnesses are in New York and Illinois, and not in the Virgin Islands. Outside of local counsel, both defendant's and plaintiff's lawyers are New York attorneys. The Virgin Islands has only a tangential interest in this claim. Neither party is resident in the Virgin Islands. Any harm caused to the defendant in the Virgin Islands is slight: the alleged libel, although published here, has had little or no effect on the defendant's reputation here, as indeed, he no longer conducts business here.

At the same time, Stanton's interest in convenient and effective relief can better be protected in his home state where most of the witnesses reside. The "public interest" factors are neutral and do not favor one venue over the other, nor does the relative congestion

282

of the District of the Virgin Islands and the Southern District of New York or the choice of law to be applied.

■ Based on the foregoing, this Court agrees with Hyatt that "New York . . . is the proper venue." (Def.'s Mot. at 41.) Since it appears that the Southern District of New York also has jurisdiction over the parties and the subject matter, this action will be transferred to that District.

### CONCLUSION

For the reasons stated in the foregoing memorandum, the Court will transfer this matter to the Southern District of New York.

ENTERED this 29th day of April, 1999.