## GOVERNMENT GUARANTEE FUND OF THE REPUBLIC OF FINLAND, SAASTOPANKKIEN KESKUS-OSAKE-PANKKI (SKOPBANK), 35 ACRES ASSOCIATES, 12 ACRES ASSOCIATES and BENEFORI OY, Plaintiffs

### v.

### HYATT CORPORATION, Defendant

Civ. No. 1995-49(M)

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 19, 1997

Warren B. Cole, Esq., and Richard Hunter, Esq., (Hunter, Colianni, Cole & Turner), Michael M. Baylson, Esq., (Duane, Morris & Heckscher), and Samuel H. Hall, Jr., Esq., (Birch, De Jongh, Hindels & Hall), *for Plaintiffs*

John Zebedee, Esq., (Hymes & Zebedee), R. Eric Moore, Esq., St. Croix, U.S.V.I., John A. Sopuch, III, Esq., (Sopuch, Nouhan & Higgins), and Claude D. Montgomery, Esq., (Philips, Lytle, Hitchcock, Blaine & Huber), *for Defendant*

MOORE, *Chief Judge*

## CLARIFYING MEMORANDUM

## INTRODUCTION

This Memorandum is submitted pursuant to Third Circuit Local Appellate Rule 3.1 to clarify a portion of this Court's Order dated November 21, 1997 ["November 21st Order"], requiring Hyatt to

> produce to the Skopbank Parties all documents listed on Hyatt's privilege logs authored by or received from Attorneys Shindler and/or Geoga. Specifically included are communications with outside counsel, Phil Kayman, Mr Smith, and the Vorhees law firm, as it relates to Mr. Schindler's Declaration. Excluded from this order is work product relating to this litigation.

(November 21st Order at 4-5.) The November 21st Order was intended to supplement those orders issued on the formerly privileged documents of Michael Shindler and Douglas Geoga ["Shindler and Geoga Documents"] to counsel during the telephone conference with counsel on November 20, 1997 [the "Telephone Conference"].

### Plaintiffs' Motion for Contempt, Preclusion and Other Sanctions

On May 16, 1997, the Government Guarantee Fund of the Republic of Finland, Saastopankkien Keskus-osake-pankki (Skopbank), 35 Acres Associates, 12 Acres Associates, and Benefori Oy ["Skopbank Parties"] filed their motion for contempt, preclusion and other sanctions, together with a 102-page brief in support and a three-volume appendix. A list of plaintiffs' grievances against Hyatt for obstructing discovery included: failure to comply with orders of this Court and the Magistrate Judge, failure to fully respond to interrogatories, misleading representations to this Court, improper blocking of third-party subpoenas, improper assertion of attorney-client privilege and refusal to log documents for which the privilege was asserted, impeding access to electronic data, failure to produce a redaction log, and others.

Central to this Clarifying Memorandum is the claim that Hyatt waived the privilege by submitting an affidavit from Michael Shindler in response to the Skopbank Parties' motion for summary

judgment on Hyatt's counterclaims.[1] The Skopbank Parties claim that Hyatt abused and improperly asserted the attorney-client privilege regarding Mr. Shindler's communications by (1) obtaining a ruling from the Magistrate Judge protecting many of those communications and then (2) submitting a sworn Declaration of Mr. Shindler giving testimony on the very same subjects within the scope of the privilege the Magistrate Judge had just upheld.

## The Court's Sua Sponte Motion to Hyatt to Show Cause

Useful background to the November 21st Order is also plaintiffs' claim that Hyatt had failed to comply with the Court's order of January 28, 1997, to produce an accounting document in lieu of an equitable accounting.

> While the Skopbank Parties are not entitled to an equitable accounting, they are entitled to have Hyatt prepare and produce such a "document" accounting for all the benefits it received while wrongfully in possession of the hotel, after March of 1995, including the management fee, chain allocation expenses, etc. . . . The Court recognizes that this requirement exceeds what is encompassed by discovery in civil litigation. The equities of this case justify such an extension.

*Government Guarantee Fund v. Hyatt Corp.*, 35 V.I. 356, 955 F. Supp. 441, 467 (D.C.V.I., 1997) [erroneously identified by Westlaw as an opinion of the Territorial Court "(Terr.V.I.)"].

On April 4, 1997, the Court granted partial summary judgment in favor of the Skopbank Parties and dismissed Hyatt's breach of contract counterclaims. *Government Guarantee Fund v. Hyatt Corp.*, 36 V.I. 295, 960 F. Supp. 931 (D.C.V.I. 1997). Claiming that it was dumbfounded that the Court could find the relevant provisions of the March 1990 Agreements among the parties to be clear and unambiguous, Hyatt moved to amend its answer and counterclaim

---

[1] As the transcripts of the various hearings on the Skopbank Parties' motion make clear, including the hearing on November 14, 1997, and the Telephone Conference, the November 21st Order had nothing to do with the Magistrate Judge's rulings on the attorney-client privilege issue or any appeal therefrom the Skopbank Parties may have filed.

based on the "new information" imparted by the Court's rulings. After a hearing at which it expressed from the bench its opinion of Hyatt's motion, this Court entered its written findings:

> Hyatt seeks to amend its counterclaim to assert additional claims of reformation of the Management Agreement and Subordination Agreement, fraud and a claim under the Racketeer Influenced and Corrupt Organizations Act ["RICO"]. Hyatt also seeks to add affirmative defenses of mutual mistake, unilateral mistake with knowledge, fraud, recoupment and offset. In its memorandum in support of its motion to amend, Hyatt alleged that it was not until this Court's opinion dated April 4, 1997 granting the Skopbank Parties' motion for partial summary judgment on Hyatt's counterclaim for breach of contract, that the parties to the Management Agreement "realized that their understanding of the Management Agreement was apparently mistaken . . . ." (Mot. Hyatt Corp. Leave of Court to File Amended Answer and Counterclaim ["Motion to Amend"] at 2.) That assertion is absurd.

*Government Guarantee Fund v. Hyatt Corp.*, No. CIV. 1995-49, 1997 WL 449952 at *1 (D.C.V.I., June 19, 1997) [erroneously identified by Westlaw as an opinion of the Territorial Court "(Terr.V.I.)"].

The Court summarily rejected Hyatt's mutual mistake theory.

> The issue of the meaning and effect of the relevant sections of the Management Agreement and the Subordination Agreement was hotly contested, fully litigated and ultimately resolved by this Court on April 4, 1997. Hyatt's reformation count is nothing more than conjuring up a new theory based upon the same set of facts that have been before the Court and known to Hyatt over the course of two years of litigation. This Court clearly stated in its April 4, 1997 opinion: "The Court finds that the March 1990 Agreements are unambiguous and simply do not support Hyatt's interpretation." 960 F. Supp. at 944. Hyatt simply cannot now allege a mutual mistake theory after having failed to persuade the Court of its interpre-

230

tation of the agreements which would support that theory.

*Id.* at *1-2.

The Court similarly spurned Hyatt's new

rendition of its fraud allegation. Hyatt asserts that it "did not become aware of its fraud claim until discovery and investigation revealed that Skopbank had no intention of ever recognizing or honoring the Management Agreement or Hyatt's rights to manage the Hotel upon a foreclosure or subsequent sale to a third party." (Motion to Amend, at 2.) However, Hyatt asserted these same allegations in its opposition to Skopbank's motion for partial summary judgment on Hyatt's breach of contract counterclaims under the theory that Skopbank had breached a duty of good faith and fair dealing. Hyatt is simply using these same facts to infer that Skopbank engaged in some sort of fraudulent conduct. The Court has already decided that the conduct does not amount to any breach of a duty of good faith and fair dealing, a fortori it could not support Hyatt's "new" theory of fraud or any RICO claim.

*Id.* at *2 (internal citation omitted).

In summarily denying Hyatt's motion to amend the pleadings yet again, the Court made its frustration with Hyatt's delaying tactics crystal clear:

This Court agrees with the characterization by the Skopbank Parties of Hyatt's repeated attempts at amending its pleadings.

Hyatt arrogantly treats each Hearing before the Court as if it were nothing more than a dress-rehearsal for the next and each Adjudication by the Court in thorough, detailed and obviously time-consuming Opinions and Orders as if it was nothing more than a preliminary draft proposed by the Court for Hyatt's review and comments, or the brief of another litigant, to be analyzed and somehow distinguished.

*Id.* at *2-3. Since it appeared to the Court that Hyatt's latest motion was filed "simply to unreasonably and vexatiously hinder and delay these proceedings in violation of 28 U.S.C. § 1927," it was

> ORDERED that Hyatt shall include in its July 15, 1997 response to the Skopbank Parties' Motion for Contempt and Sanctions its explanation for why its motion to amend its counterclaim and answer does not warrant sanctions.

*Id.* at *4.

In addition to the Court's April 4th Opinion, its June 19th decision ruling on the Skopbank Parties' motion for partial summary judgement is important background for the ruling in the November 21st Order being clarified here. It was in opposition to this motion of plaintiffs' that Hyatt submitted Mr. Shindler's sworn Declaration, which the Court considered and rejected in *Government Guarantee Fund v. Hyatt Corp.*, 36 V.I. 295, 960 F. Supp. 931.

> Hyatt submitted several affidavits from Hyatt and Great Cruz principals involved with the hotel who stated their understanding that no payments would be due to Skopbank until after the renovation program was completed. (See, e.g. . . . . Declaration of Michael Shindler at 5 . . . .) The Court . . . notes that none of these principals have alleged that the provisions of the March 1990 Agreements are ambiguous. The Hyatt affidavits rather put forth a particular interpretation of those provisions. The Court finds the March 1990 Agreements to be unambiguous and that Hyatt's proffered interpretation is not supported by the plain language of the March 1990 Agreements.

*Id.* at 944 n.15. The Court thus held "that the March 1990 Agreements are unambiguous and simply do not support Hyatt's interpretation." Id. at 944.

**Plaintiffs' Motion to Strike Defenses and Objections**

The November 21st Order ruled on the Skopbank Parties' motion to strike affirmative defenses and Hyatt's objections to

interrogatories relating to the affirmative defenses. Hyatt's very broad and encompassing objections were parroted by reference into every answer, whether or not it was appropriate. Hyatt interposed blanket objections to every interrogatory despite the fact that only four weeks remained for discovery.

### The Hawaii Litigation

While Hyatt was failing to comply with this Court's order to produce an accounting document, filing frivolous motions to amend the pleadings, and otherwise engaged in stonewalling legitimate requests of the Skopbank Parties for discovery, Hyatt fought discovery on another front. The Skopbank Parties in June of this year sought discovery of pleadings, documents, depositions and exhibits produced in *Grand Wailea Co. v. Hyatt,* Civil No. 95-00350-HG (D. Haw.), an action pending in the United States District Court for the District of Hawaii. A common issue in *Grand Wailea* and this case related to claims that rebates, commissions, or "kickbacks" (Hearing of November 14, 1997, Transcript ["Tr."] at 16) to Hyatt from vendors who supplied goods and services to hotels under its management, including the St. John hotel.

Hyatt objected to this discovery based on a stipulated confidentiality agreement it had negotiated with the parties involved in *Grand Wailea.* In August, the Magistrate Judge largely upheld the objections, allowing only limited access to the highly relevant documents. The Skopbank Parties appeal of the Magistrate Judge's action was also under consideration at the time of the November 14th hearing, the Telephone Conference, and the court's November 21st Order.

### THE FINDINGS

The Court held several hearing on various aspects of the Skopbank Parties's motion and the Court's sua sponte show cause order and both parties briefed the issues in their usual exhaustive and exhausting manner. At a hearing held October 15, 1997, the attorney-client privilege issue regarding the Shindler and Geoga documents was fully aired. It was at the next hearing on November 14, 1997, that the Court found the conduct of both Hyatt and its

233

then-trial counsel[2] demonstrated an overall, pervasive pattern of stonewalling the legitimate discovery efforts of the Skopbank Parties and otherwise delaying and obstructing the orderly process of this litigation.

The Court specifically found that Hyatt's failure to comply with this Court's January 28, 1997, Order requiring it to produce an accounting document (in lieu of an equitable accounting) was sanctionable, if not contumacious (November 14th Tr. at 76-77); its conduct formed an integral part of the overall pattern of delay and obstruction. Hyatt attempted to justify its submission of nothing more than an outline of its cash receipts as complying with an oral modification of the written and published order during a telephone on February 5, 1997, concerning discovery matters conducted jointly with the Magistrate Judge. A review of the transcript of that telephone call gives no support to Hyatt's make-weight argument. There is no way that Hyatt and its then-counsel could have contended in good faith that this document satisfied this Court's order to produce an accounting for all the benefits Hyatt received while it wrongfully remained in possession of the St. John Hotel during the eighteen months between March 1995 and September 1996.[3]

Regarding the Court's sua sponte order, Hyatt and its former counsel, as well as its present trial counsel, were given more than ample opportunity to brief, argue and show cause why the Court should not impose sanctions for their conduct in filing the motion to amend the answer and counterclaim after the Court had ruled that the factual basis asserted by Hyatt could not have rendered the March 1990 Agreements ambiguous or the Skopbank Parties' conduct fraudulent. Since Hyatt and it attorneys utterly failed to justify their actions, this Court found that Hyatt's motion to amend

---

[2] At that time, Hyatt was represented by the firm of Bickel & Brewer. This firm has since moved to withdraw as counsel, having been replaced by the law firm of Philips, Lytle, Hitchcock, Blaine & Huber.

[3] The form and extent of any sanction for the failure to comply with the January 28, 1997, Order requiring an accounting document was deferred for an assessment of the "document" Hyatt has since produced through its new counsel. (November 14th Tr. at 74-77.)

234

required the imposition of monetary[4] and non-monetary sanctions. (November 14th Tr. at 66.) This motion was but part and parcel of Hyatt's bad faith in the conduct of this litigation.

Regarding Hyatt's delay in answering the interrogatories relating to the affirmative defenses, this Court found that the Skopbank Parties were prejudiced by the numerous objections and spareseness of the answers. As a sanction, Hyatt was limited to answers it had given, unless Hyatt could show that the information was not available (November 14th Tr. at 92-96). Further, several affirmative defenses were struck. This second point is particularly relevant because Hyatt had interposed several affirmative defenses which were directly contrary to and inconsistent with this Court's prior rulings on matters of law. Much as with Hyatt's motion to amend the pleadings, for which sanctions would be imposed, these defenses never should have been filed, and, at the very least, should have been withdrawn. (Telephone Conference Tr. at 42-43.) These tactics were part and parcel of Hyatt's sanctionable conduct in this case.

The Court also dealt with Hyatt's use of a confidentiality agreement it had negotiated to thwart the Skopbank Parties' discovery of material produced in the Hawaii litigation. At the hearing on November 14, 1997, the Court heard extensive argument on this appeal from the Magistrate Judge. Plaintiffs first sought this information on rebates and commissions by subpoenas for documents from Hyatt and its affiliates in February of 1996. (Telephone Conference Tr. at 26.) The documents had not been produced, even though some should have been as part of the accounting document the Court ordered Hyatt to produce on January 28, 1997. (*Id.* at 30-31.) The Magistrate Judge ordered limited production of redacted documents in the *Grand Wailea* case, but concluded that he did not have jurisdiction to modify a confidentiality order entered by the Hawaii District Court, and the Skopbank Partis appealed. Hyatt's present counsel denied that it was Hyatt's unilateral right to waive the Hawaii protective order, even though prior counsel had done so for two Hawaii depositions. (November 14th Tr. at 46, 53.)

---

[4]The Court ruled that the imposition of monetary sanctions would be deferred until after the trial, presently scheduled for March 2, 1998. (November 14th Tr. at 66-67.)

Following a series of communications with the Magistrate Judge in Hawaii who had approved the confidentiality agreement, this Court ordered Hyatt to produce that discovery it had control over and not to oppose the Skopbank Parties' intervention in the Hawaiian district court to gain access to material not produced by the other litigants. (November 21st Order at 2-4.) A reading of the *Grand Wailea* protective order discloses that Hyatt reserved the right in Section 4.1(2) of its attorney to consent to the outside dissemination of the protected material it had produced. (Telephone Conference Tr. at 11.) This was obviously the basis upon which prior counsel had consented to the distribution of the two protected depositions. It was also obvious, giving present Hyatt counsel the benefit of the doubt, that he had not read the protective agreement. (*Id.* at 26-27.) This episode is but one more example of Hyatt's stonewalling attitude towards discovery.

As stated by the Court during the Telephone Conference, "I think we've run out of time for anybody, either side, to play games with this kind of discovery." (Telephone Conference at 25.) The Court further stated that

> the parties should be clear that not necessarily the basis for the Court's ruling in these two respects on the appeal, but the scope and the extent of the Court's order is affected by . . . the Court's finding that there has been . . . less than a forthcoming history on the part of Hyatt in producing discovery, as I think I made clear last week from the bench.

(*Id.* at 28.)

## THE BASIS FOR THE COURT'S ORDER

On November 20, 1997, this Court conducted a nearly 2-hour telephone conference during which it dealt with numerous topics, including the form that the non-monetary sanctions would take. Other elements of the sanction are outlined in the written November 21st Order. These show that the Court ordered the production of the privileged documents both based upon settled law and as a sanction for Hyatt's bad faith in all the matters discussed above.

236

First, this Court indicated that the question whether the attorney-client privilege had been waived on the Shindler and Geoga Documents would be considered separately.

> The Court: . . . Let me just again itemize what I think — and correct me if I've missed something — but what was left pending . . . when we last got together were the form of any sanctions for the two violations that I found having to do with discovery and with regard to the Order, the Court's sua sponte [motion], as we call it. And the appeal from the Magistrate Judge's order.
>
> The question of whether or not Hyatt has waived the privilege with regard to Mr. Shindler, I think it was . . . [interruption by appearance of new counsel].

(Telephone Conference Tr. at 5.)

Further, the Court stated during the Telephone Conference that the Shindler and Geoga documents could properly be ordered produced both as a matter of settled law and as a sanction. "The Court: Well, I have concluded that as a part of the sanction, as well as just based on the law, that the motion [to compel the production of the documents] should be granted." (*Id.* at 45.) The relevant portion of the November 21st Order is reproduced on the second page of this memorandum.

## Hyatt Waived the Attorney-Client Privilege

On January 27, 1997, the Skopbank Parties filed a motion for partial summary judgment on Hyatt's counterclaims. On February 28, 1997, Hyatt served its reply supported by sworn affidavits. One of these affidavits was that of Michael Shindler, Senior Vice President of Hyatt Development Corporation ["Shindler Declaration"]. Michael Shindler, along with Douglas Geoga, President of Hyatt, had been attorneys before taking management positions with Hyatt.[5] Mr. Shindler originally had been designated as Hyatt's RULE 30(b)(6) witness, but was later withdrawn. Mr. Geoga

---

[5] Hyatt's outside counsel so stated in a letter to the Skopbank Parties' counsel.

While it is true that Mr. Shindler is an attorney, his title and responsibilities within Hyatt Corporation have changed since you and he began having discussions in

testified in depositions that Mr. Shindler made key decisions in the Skopbank relationship after consulting with Mr. Geoga. (Deposition of Douglas Geoga, February 19, 1997, at 43-45.)

By using the Declaration of Michael C. Shindler to support its opposition to the Skopbank Parties' motion for partial summary judgment, Hyatt waived the privilege as to Mr. Shindler's communications relating to the subject matter of the declaration. Hyatt cannot use an officer and active player in it's relationship with the Skopbank Parties to put forth facts supporting its opposition and then deny access to his letters and other communications with him on these same subjects because he is an attorney. Hyatt cannot use the privilege to shield from discovery those matters related to the subjects dealt with in its affidavit.

> The attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct.

*Livingstone v. North Belle Vernon Borough,* 91 F.3d 515, 537 (3d Cir. 1996) (*citing* RESTATEMENT OF THE LAW GOVERNING LAWYERS § 130(1) (Final Draft No. 1, 1996)).

The Shindler Declaration ranged far and struck at the heart of the conflict between the parties. Mr. Shindler described himself as one of the representatives of Hyatt in the negotiation, drafting and finalizing of the March 1990 Agreements. Declaration at ¶ 4. The declaration described his "(and, therefore, Hyatt's)" (id. at ¶ 9) understandings about: the meanings and effect of certain provisions of the agreements, the right to declare defaults (*id.* at ¶¶ 8-9), and the relationship between Hyatt, Skopbank and Great Cruz (the owner of the Hotel at the time of drafting the agreements) (*id.* at ¶¶ 8-12). The Declaration indicated that its author was "involved in and had responsibility for a number of issues which arose in connection with the relationship among" the parties. (*Id.* at ¶ 7.)

---

1991. Today, Mr. Shindler is a Senior Vice President of Hyatt Development Corporation and he is the business person responsible for this hotel.

Letter dated March 10, 1995, from Thomas B. Smith of Maguire, Voorhis & Wells, P.A., Orlando, Florida.

These "issues" included retention of funds by the hotel (*id.* at ¶¶ 17-23); the provision of services and utilities to the accompanying Villas (*id.* at ¶¶ 24-28); the original owner's (Great Cruz) failure to approve the renovation program (*id.* at ¶ 29), Great Cruz' breach of the management agreement (*id.* at ¶ 30), the repudiation of the Guaranty (Id. at ¶¶ 31-32), and this District Court's orders to release funds in the foreclosure action (*id.* at ¶¶ 33-35).

As with the plaintiff's assertion in *Livingstone* that she did not understand her agreement's implications, here, Hyatt asserted its understanding of the implications of its agreements with the Skopbank Parties based on Shindler's interpretations. And just as "it would be unfair to allow [Mrs. Livingstone] to make [her claim of inaccurate legal advice] without permitting the opposing parties to investigate her attorney's version of the facts," *id.* at 537, so it would be unfair to allow Hyatt to use the testimony of one of its officers to counter the Skopbank Parties' claims and then not allow plaintiffs to investigate that officer's contemporaneous and subsequent communications. As authority, the Court of Appeals cites *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 116 L. Ed. 2d 39, 112 S. Ct. 63 (1991), which held that in asserting claims that "in fairness requires examination of protected communications" that party thereby waives the attorney-client privilege over the otherwise protected communications.

As a related basis for the waiver, the Court of Appeals has held that "the advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indemnity Company*, 32 F.3d 851, 863 (3d Cir. 1994) (*citing North River Insurance Co. v. Philadelphia Reinsurance Corporation*, 797 F. Supp. 363, 370 (D.N.J. 1992).

■ Whether based on prejudicial unfairness to the opposing party in making a claim that can only be countered through waiver of the privilege, or based on the disclosure and use of attorney client communications, Hyatt waived the privilege on those matters covered in the Shindler Declaration. Mr. Shindler's Declaration was wide-ranging. Primarily, it offered his and Hyatt's understanding and belief regarding the interpretation of the March 1990

239

agreements, and Hyatt's compliance therewith, which form the basis of this action. It also offered testimony of his decisions how to use the "excess cash" at the St. John Hotel, the payment of base debt, and the payment of Owner's Remittances.

It is in this Court's power to deem all communications relating to Mr. Shindler's declaration to be discoverable. *See Multiform Dessicants, Inc. v. Stanhope Products Co.*, 930 F. Supp. 45, 48 (W.D.N.Y. 1996) ("by submitting the declarations of the . . . attorney . . . the plaintiffs had voluntarily waived the attorney-client privilege with respect to all communications relating to the subject matter of the declarations.") (emphasis added) (*citing Mushroom Assocs. v. Monterey Mushrooms, Inc.*, 1992 U.S. Dist. LEXIS 0640 (N.D. Cal. Aug. 21, 1992).

The Court of Appeals has set similar precedent. In *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995), the Court dealt with the scope of waiver in which petitioners submitted an opinion letter of the law firm acting for the Glenmede Trust.

> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here — fairness.

*Id.* at 486.

The Court of Appeals upheld the District Court insomuch as it determined that the petitioner "waived the attorney-client privilege as to *all* communication, both written and oral, to or from counsel as to the *entire* transaction." *Id.* (emphasis added).

## Hyatts' Continued Assertion of the Attorney-Client Privilege Is Part of Its Obstructive and Sanctionable Conduct

The alternative basis for ordering the production of these documents is as part of the non-monetary sanctions imposed on

Hyatt for its pervasive obstruction of discovery in this litigation and of the orderly processes of this Court.

A representative sampling of the many instances of Hyatt's obstructive conduct during the course of this litigation has been highlighted in this Clarifying Memorandum. This sampling shows the pervasiveness of Hyatt's overall strategy to erect a stone wall to block the Skopbank Parties' entitlement to discover the facts of this dispute, conduct which far exceeded Hyatt's right to confine it opponents' requests to appropriate materials and subjects. The Court finds that Hyatt's attempt to use the attorney-client privilege as both a shield and a sword is part and parcel of its overall scheme to stonewall discovery and obstruct the processes of this Court. Just as the the use of privilege was part of conduct which the Court has found to be sanctionable, just so the release of these documents from that privilege is an appropriate non-monetary sanction.

■ Hyatt sought and received protection of certain documents based on attorney-client privilege and then used a declaration of the attorney whose bar membership created that privilege in an attempt to convince this Court to deny plaintiffs' motion for partial summary judgment. This tactic of playing games with discovery was sanctionable. Since Hyatt chose to use Mr. Shindler as a sword in its opposition to partial summary judgment, it cannot also use the privilege of Mr. Shindler as a shield to prevent discovery of matters related to his declaration.

## CONCLUSION

Based upon established precedent confirming that Hyatt waived the attorney-client privilege, and as a sanction for its stonewalling and obstructing the discovery process of this litigation, this Court has ordered that Hyatt produce to the Skopbank parties, *inter alia,* all documents of Mr. Shindler and his boss, Mr. Geoga. Work product relating to the litigation at bar is excluded, but communications with outside counsel are included.

ENTERED this 19th day of December, 1997.