**ASPEX EYEWEAR, INC.,
et al., Plaintiffs,**

v.

**E'LITE OPTIK, INC., Defendant.**

**No. CV–S–00–1116–PMP (PAL).**

United States District Court,
D. Nevada.

July 14, 2003.

W.W. Allen, Lewis & Roca, LLP, Las Vegas, Jess M. Collen, Collen Law Firm, Scarborough, NY, Torry Somers, Hale Lane Peek, et al, Mark G. Tratos, Quirk & Tratos, Las Vegas, Matthew C. Wagner, Collen Law Associates, PC, Ossining, NY, for Aspex Eyewear, Contour Optik, Plaintiffs.

Jane Politz Brandt, Thompson & Knight, LLP, Max Ciccarelli, Thompson & Knight, LLP, Dallas, TX, Michael N. Feder, Beckley Singleton, Chtd., Dean Y. Kajioka, Kajioka Christiansen & Toti, Las Vegas, Darin Klemchuk, Thompson & Knight, LLP, Robert M. Mason, Mason & Petruzzi, James D. Petruzzi, Mason & Petruzzi, Dallas, TX, Daniel F. Polsenberg, Beckley Singleton, Chtd., Las Vegas, Bruce S. Sostek, Thompson & Knight, LLP, Dallas, TX, Mario D. Valencia, Mario D. Valencia, Law Office Of, Henderson, Richard L. Wynne, Thompson & Knight, LLP, Dallas, TX, for Defendant.

### ORDER

LEEN, United States Magistrate Judge.

This matter is before the court on Plaintiffs' Motion to Compel Discovery (# 110). The court has considered the plaintiff's motion to compel and attached exhibits; Exhibit # 111, the sealed unofficial transcript of the deposition of Robert Mason; Amended Exhibit # 113, the sealed official transcript of the deposition of Robert Mason; Defendant's Response to Plaintiffs' Motion to Compel Discovery (# 116); and plaintiffs' reply (# 119).

On April 14, 2003, the court heard oral arguments of counsel and took the matter under submission.

### BACKGROUND

This is an action for patent infringement. Plaintiffs allege that defendant has infringed U.S. Patent Nos. 5,737,054 ("054 Patent") and 6,012,811 ("811 Patent") that generally pertain to magnetic attachment of auxiliary eyeglass frames to primary eyeglass frames by use of a bridge mounted attachment. Plaintiffs assert defendant willfully infringed the Patents-in-suit by exhibiting and offering various models of eye wear for sale at a trade show in Las Vegas in September of 2000. The primary product accused of infringement is E'Lite's C–Clip product. E'Lite defends the willfulness allegation by asserting that it believed in good faith that it did not infringe the patents and has elected to rely on the opinions of counsel to support this defense. E'Lite has designated its former trial counsel in this case, Attorney Robert Mason, and Mr. John Fischer, a patent attorney who gave E'Lite a written opinion on the Patents-in-suit after the lawsuit was filed, as expert witnesses to support this defense.

This dispute involves the extent of the waiver of the attorney-client privilege and work-product immunity in the context of reliance on legal advice as a defense to willfulness. In the current motion Aspex seeks to compel further responses to Request for Production of Document Nos. 5, 10, 11, 14, 17, 19 and 20, to which objections of privilege have been asserted by E'Lite. Aspex also seeks to compel compliance with a subpoena duces tecum served on Attorney Robert Mason prior to his deposition and to compel Mr. Mason to sit for a second session of his deposition, and respond to questions to which privi-

lege objections and instructions not to answer were given.

The parties agree that E'Lite's reliance on the opinion of counsel as a defense to the allegation of willful infringement results in the waiver of both the attorney-client privilege and work-product doctrine concerning communications and work-product related to the issues of infringement, validity, and enforceability of Aspex's patents. They dispute the scope of the waiver. Plaintiffs assert that by relying on the advice of counsel defense defendant has waived all attorney-client and work-product privileges concerning all documents in defendant's possession that relate to the subjects of validity, enforceability and infringement of the Patents-in-suit. Plaintiffs argue this extends to any communications between Mr. Mason and Mr. Fisher, and defendant regarding the subject matter of the Patents-in-suit and all documents relied upon, or work-product created by Mason and Fisher in preparing their opinions.

E'Lite argues that the defendant's state of mind, rather than the attorneys' state of mind, is the relevant issue in a defense to an allegation of willful infringement, and that the scope of the waiver extends only to information exchanged between the attorneys giving the opinion and the client. E'Lite produced all documents and information that the two attorneys exchanged with E'Lite relating to the subject matter of the opinions, but has asserted attorney-client and work-product privilege objections to documents and information not provided to E'Lite. For the same reasons, counsel for E'Lite instructed Attorney Robert Mason not to answer numerous questions posed at his deposition on work-product privilege grounds unless Mason communicated the information to E'Lite. Mason did not prepare an opinion letter, and his opinions to E'Lite were all oral. Throughout the course of his deposition

Mason repeatedly testified that he was unable to specifically recall what information was or was not communicated with a representative of E'Lite. He was also unable to specifically recall what information E'Lite provided to him which influenced his opinions. Accordingly, in response to multiple questions he elected to "err on the side of caution" and declined to answer the questions based on the instruction of counsel the responses called for revelation of privileged information, unless he communicated the information to E'Lite, or E'Lite communicated the information to him for the purpose of rendering his opinions.

Counsel for the parties raised the issue of the scope of the waiver of the attorney-client and work-product privileges with the court during telephonic discovery resolution conferences prior to, and during Mr. Mason's deposition. However, because there is no published decision in this District, or Ninth Circuit decision on point, and both sides acknowledged there is a split of authority on the issue in other Districts and Circuits, the court directed that the deposition of Mr. Mason go forward, and that counsel for E'Lite exercise caution in instructing the witness not to answer questions. The court directed the parties to brief the issue at the conclusion of the deposition. The court has now had the opportunity to review more than 200 pages of Mr. Mason's deposition transcript. For the reasons set forth below, plaintiffs' motion to compel discovery is granted part and denied in part.

The court finds that where, as here, Mr. Mason did not reduce his opinions to writing, and could not specifically recall what information was relayed to the client, and what information was received from the client, fairness requires disclosure of all documents he reviewed, considered, or authored that relate to infringement, validity,

and/or enforceability of the Patents-in-suit whether or not these documents were communicated between the attorney and the client. Mr. Mason's failure to reduce his opinions to writing, and inability to recall what he discussed, when, and with whom, and what he reviewed with the client, or received from the client, creates a substantial need for discovery of his work-product. Although Mr. Fisher provided a formal opinion letter, the court will order the defendant to produce all documents Fisher reviewed, considered, or authored that relate to infringement, validity and/or enforceability of the Patents-in-suit, whether or not these documents were communicated between the attorney and client. The court finds that by relying on the advice of counsel defense to the claim of willful infringement, defendant has waived the attorney-client privilege and work-product immunity to documents on these subject matter areas. Defendant shall therefore produce all documents responsive to the subpoena duces tecum served on Mason which fall into this category. Defendant shall also produce all documents responsive to Request for Product Nos. 5, 10, 11, 14, 17, 19, and 20, except for documents prepared by its current litigation counsel after Mason turned over the file.

## DISCUSSION

### I. Procedural History

The Complaint in this case was filed September 15, 2000. A Clerk's default was entered October 31, 2000(# 6), and the District Judge entered an Order granting default judgment (# 12) on January 26, 2001. E'Lite filed a motion to set aside the default which the District Judge granted in an Order entered March 15, 2001(# 40). The parties thereafter submitted a Stipulated Discovery Plan and Scheduling Order which requested special scheduling review. The parties applied for, and received, 180 days in which to conduct discovery, measured from the date of the Rule 26(f) conference rather than the date the defendant answered, as deemed presumptively reasonable under the Local Rules of Practice. The original discovery cut-off was October 17, 2001(# 54). The parties applied for, and received, multiple additional extensions of the discovery cut-off and related case management dates. (See, Docket Nos. 58, 84, 85, 96, 98, 105, 106, 109). The parties also stipulated and obtained an order from the District Judge extending the dispositive motion deadline until 30 days after entry of an order resolving the current motion to compel (# 127).

### II. The Dispute

Plaintiffs served a first set of discovery requests June 7, 2001, and defendant responded on July 18, 2001. E'Lite did not elect to rely on the advice of counsel defense until December 3, 2002, when counsel indicated, in writing, that it would be relying on opinions of counsel regarding the Patents-in-suit to defend the allegation of willful infringement. Counsel for plaintiffs corresponded with counsel for defendant on December 13, 2002, and January 27, 2003, requesting that E'Lite supplement its discovery responses in light of E'Lite's election to rely on the advice of counsel defense, taking the position that assertion of the defense waived all attorney-client and work-produce privileges on the issues of non-infringement, invalidity, or unenforceability of the Patents-in-suit. (Plfs. Motion to Compel, Ex. C & D).

On January 24, 2003, counsel for Aspex served Mason, E'Lite's former litigation counsel in this case, and a witness designated to provide testimony on the advice of counsel defense, with a subpoena duces tecum requiring his attendance at a deposition and production of six categories of documents. Mr. Mason responded to the

subpoena on February 3, 2003, and produced a number of documents responsive to the request that accompanied the subpoena. However, counsel for E'Lite reviewed the documents prior to Mr. Mason's deposition and advised counsel for Aspex that plaintiffs would not be permitted to inspect or copy the documents because counsel for E'Lite had reviewed them, and determined the documents were privileged, and that the privileges pertaining to those documents had not been waived.

Defendant did not produce a privileged document log for documents withheld from production on privilege grounds asserting that virtually all of the litigation files of its current litigation counsel, with the exception of documents discussing damages, would be responsive to the requests for production and the subpoena duces tecum served on Mason and therefore producing a privileged document log would be unduly burdensome. Defendant's response to the motion to compel acknowledges that preparing a privileged document log for the foot-high stack of documents Mason retained in his possession would probably not be as burdensome, and that counsel was working with Mr. Mason to obtain a copy of these documents so a privileged document log could be produced. At his deposition, Mr. Mason generally described categories of documents still in his possession responsive to the subpoena duces tecum.

Mr. Mason was deposed February 6, 2003. He was repeatedly instructed not to answer questions on privilege grounds unless the question called for information that he relayed to E'Lite or E'Lite related to him in the course of rendering his opinions on the issues of willfulness, non-infringement, invalidity, or unenforceability of the Patents-in-suit. There were numerous breaks during the deposition and conferences between Mr. Mason and E'Lite's current litigation counsel to discuss how Mason should respond to the questions in light of the instructions not to answer. Thus, although the deposition started at 9:30 a.m. and concluded at 5:00 p.m. for the day, counsel for plaintiffs assert Mason only testified for approximately three to four hours of this time.

## III. *General Patent Law Principles*

■ General legal principles of patent law set the context for the parties' discovery dispute. Determination of whether a patent has been infringed is a two step process. First, the language of the claim must be interpreted. Second, the accused device must be compared to the claim language as interpreted. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). The first step of the process, claim construction, is decided as a matter of law by the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (en banc). The second step of the process, comparing the accused device to the claim language, involves a question of ultimate fact. *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983).

■ Remedies for patent infringement include preliminary and permanent injunctions, 35 U.S.C.A. § 283; monetary damages generally corresponding to lost profits, established or reasonable royalties, and interest, 35 U.S.C.A. § 284; increased damages, *id.;* and attorney's fees, 35 U.S.C.A. § 285. The patent owner is entitled to an award of damages adequate to compensate for the infringement. 35 U.S.C.A. § 284. The District Court has the discretion to award up to three times the amount found or assessed as compensatory damages. 35 U.S.C.A. § 284. Treble damages are punitive rather than compensatory and serve as a deterrent to the

tort of infringement. *Rite–Hite Corp. v. Kelley Co.,* 819 F.2d 1120, 1125–26, 2 USPQ2d 1915 (Fed.Cir.1987); *Avia Group Int'l, Inc. v. L.A. Gear, California,* 853 F.2d 1557, 1566, 7 USPQ2d 1548 (Fed.Cir. 1988). To recover treble damages the plaintiff must show the infringer's conduct is, or was, willful, intentional, or deliberate. *See, Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1547–48, 221 USPQ 1 (Fed.Cir.1984). To award increased damages a District Court must 1) find clear and convincing evidence that the infringement was willful, or that other circumstances justify an enhanced award, and 2) determine that damages should be increased by reviewing the totality of the circumstances. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570, 38 USPQ2d 1397 (Fed. Cir.1996).

■ In determining whether the infringement was willful, the primary focus is on the infringer's intent and reasonable beliefs. *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944, 22 USPQ2d 1119 (Fed.Cir. 1992). "In awarding enhanced damages, a district court considers both the aggravating and mitigating circumstances in an effort to gauge or assess, in a qualitative fashion, the egregiousness of the infringer's conduct." *Applied Medical Resources Corp. v. U.S. Surgical Corp.,* 967 F.Supp. 861, 863, 43 USPQ2d 1688 (E.D.Va.1997).

■ One who has actual knowledge notice of the patent rights of another has an affirmative duty to diligently ascertain whether he or she is infringing the patent. *Stryker Corp. v. Intermedics Orthopedics, Inc.* 96 F.3d 1409, 1414–16, 40 USPQ2d 1065 (Fed.Cir.1996). The critical inquiry is whether the infringer had sound reason to believe that he or she had the right to act in a matter subsequently found to be infringing. *SRI Int'l v. Advanced Tech. Lab.,* 127 F.3d 1462, 1464–65, 44 USPQ2d 1422 (Fed.Cir.1997).

■ An important factor in determining willful infringement is whether the infringer sought and obtained competent legal advice before initiating potentially infringing activity. *See, e.g., Electro Med. Sys. S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1056, 32 USPQ2d 1017. In *Electro Med Sys. S.A.* the court held that when an infringer accused of willful infringement does not produce an exculpatory opinion of counsel, the trier of fact may draw an inference that no opinion was obtained or that the opinion was not favorable. *Id.* However, there is no rule that an opinion letter from counsel necessarily precludes a finding of willful infringement, *Kori Corp. v. Wilco Marsh Buggies & Draglines,* 761 F.2d 649, 656, 225 USPQ 985 (Fed.Cir.), *cert denied,* 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). Similarly, there is no hard and fast rule that the lack of an opinion letter automatically requires a finding of willfulness. *Rolls–Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 231 USPQ 185 (Fed.Cir.1986).

■ A finding of willful infringement only arises if the infringer's counsel was wrong. Therefore, the inquiry is not the legal correctness of the opinion, but whether the opinion was competent. An opinion is competent if it is "thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944, 22 USPQ2d 1119 (Fed.Cir.1992); *Johns Hopkins University v. Cellpro, Inc.,* 152 F.3d 1342, 1364 (Fed.Cir.1998). To determine the competency of legal advice obtained the following factors are examined:

1. When the infringer sought the advice;

2. What the infringer knew about counsel's independence, skill, and competence to provide the opinion;

3. What the infringer knew about the nature and extent of the analysis performed by counsel; and

4. What the infringer knew and had concluded about the credibility, value, and reasonableness of the opinion.

*Johns Hopkins Univ.*, 152 F.3d at 1364, 47 USPQ2d 1705; *SRI Int'l*, 127 F.3d at 1464–68, 44 USPQ2d 1422; *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F.Supp. 616, 620, 29 USPQ2d 1872 (D.Del. 1993).

 The Federal Circuit looks to objective evidence of the adequacy of a legal opinion. *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 219 USPQ 569 (Fed.Cir.1983). Factors include whether counsel examined the file history of the complaint, whether the opinion was written or oral, whether the opinion came from in-house counsel or outside counsel, whether the opinion came from a patent attorney, whether the opinion was detailed or merely conclusory, and whether material information was withheld from the attorney. *See, e.g., Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190–93, 48 USPQ2d 1001 (Fed.Cir. 1998); *SRI Int'l v. Advanced Tech Lab*, 127 F.3d at 1464, 1465–67, 44 USPQ2d 1422 (Fed.Cir.1997); *Read Corp. v. Portec. Inc.*, 970 F.2d 816, 829, 23 USPQ2d 1426 (Fed.Cir.1992); *Ortho Pharm. Corp.* 959 F.2d at 944–45, 22 USPQ2d 1119; *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics*, 976 F.2d 1559, 1580–81, 24 USPQ2d 1321 (Fed.Cir.1992); *Uniroyal Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1546–47, 19 USPQ2d 1432 (Fed. Cir.1991).

## IV. *Reliance on the Advice of Counsel Defense and Waiver*

 The parties acknowledge that when an accused infringer relies on the advice of counsel defense the accused infringer waives the attorney-client privilege and work-product immunity on the subject matter of the defense. The parties dispute the scope of that waiver. A District Court in patent litigation should apply Federal Circuit law in resolving discovery issues that occur in the unique context of patent litigation. *Chiron Corp. v. Genentech, Inc.*, 179 F.Supp.2d 1182, 1185–86 (E.D.Ca. 2001). However, the Federal Circuit has not decided the scope of the waiver of the attorney-client privilege and work-product immunity in a discovery dispute where reliance of counsel is asserted as a defense to willfulness, and the district courts have resolved disputes over the scope of the waiver differently.

Plaintiffs' arguments favoring a broad finding of waiver focus on the need to know the underpinnings of the advice received and what it was based upon in order to test the adequacy and competency of the advice rendered, and the reasonableness of E'Lite's reliance on that advice. Defendant urges the court to find a narrow waiver and focuses its arguments on the principle of patent law that the determination of whether infringement is willful is, by definition, a question of the *infringer's* intent. Therefore, defendant emphasizes that, if E'Lite was not privy to the information, it is not relevant or probative of E'Lite's state of mind.

There is a split of authority among the cases that have addressed the scope of the waiver of the attorney-client privilege and work-produce immunity in the context of the defense of reasonable reliance on advice of counsel to an allegation of willful infringement. One line of cases take an expansive view of the scope of a waiver analyzing the need for discovery in litigation generally. *See, e.g., Carl Zeiss Jena GmbH, and Carl Zeiss, Inc. v. Bio–Rad Laboratories, Inc.*, 2000 WL 1006371 (S.D.N.Y.2000); *Fonar Corp. v. Johnson &*

*Johnson,* 227 USPQ 886, 3 Fed. R. Serv.3d 145 (D.Mass.1985); *Chiron Corp. v. Genentech,* 179 F.Supp.2d 1182 (E.D.Ca.2001); *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 1992 WL 442892 (N.D.Ca. 1992); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 192 USPQ 316 (N.D.Ca.1976).

Another line of cases criticizes this approach for failing to recognize Federal Circuit authority on the substantive patent law of willful infringement, and holds that the waiver does not extend to attorney work-product or documents upon which an attorney relied, unless they were disclosed to the client. *See, e.g., Steelcase v. Haworth,* 954 F.Supp. 1195, 43 USPQ2d 1041 (W.D.Mich.1997); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 837 F.Supp. 616, 29 USPQ2d 1872 (1993).

The court finds the former line of cases more persuasive. The Federal Circuit has held that discovery and other procedural issues not unique to patent cases should be decided pursuant to the law of the regional circuit where the district court sits. *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75 (Fed.Cir.1984); *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 648 (Fed.Cir.1994). Although the defense of reliance on advice of counsel to an allegation of willful infringement is an issue that appears unique to patent litigation, reliance on the advice of counsel defense, in general, is not. "Few areas of privilege law have been as extensively litigated of late as the question of whether a waiver has occurred by virtue of an affirmative reliance on privileged material." *Epstein, The Attorney–Client Privilege and the Work–Product Doctrine,* page 343, Fourth Edition, published by the American Bar Association, Section of Litigation, 2001.

There are many contexts in which the courts have held a party waives the attorney-client privilege by affirmatively relying on the advice of counsel to support a claim or defense. *See, e.g., Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2nd Cir.1964), *cert denied,* 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965) (attorney client privilege waived where the advice of counsel defense raised in an antitrust case and attorney had submitted an affidavit to the Civil Aeronautics Board); *Livingstone v. North Belle Vernon Boro.,* 91 F.3d 515, 537 (3rd Cir.1996) (civil rights plaintiff who asserted she relied on advice of counsel in waiving the right to sue put advice of counsel in issue and waived privilege); *United States v. Amlani,* 169 F.3d 1189, 1195–96 (9th Cir.1999) (client asserting he discharged attorney for certain reasons cannot invoke the attorney-client privilege to deny government counsel access to the information needed to refute claim); *Tsai–Son Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999) (executive deponents claiming during deposition that they relied on advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Johnson v. Rauland–Borg Corp.,* 961 F.Supp. 208, 211 (N.D.Ill. 1997) (employer who asserted it acted reasonably by employing outside attorney to investigate Title VII claim waived privilege).

 Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield. This court joins those courts that have held that the defendant, having waived the privilege by asserting the advice of counsel defense, must produce not only attorney-

client communications, but also all documents relied upon or considered by counsel in rendering the opinions relied upon. *Mushroom Assoc. v. Monterey Mushrooms, Inc.*, 24 USPQ2d 1767, 1992 WL 442892 (N.D.Ca.1992); *FMT Corp. v. Nissei ASB Co.*, 24 USPQ2d 1073, 1992 WL 240688 (N.D.Ga.1992); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D.Ca.1976). A contrary result ignores the potential for litigation abuses, and erects too much of an impediment to the truth seeking process. Counsel for the opposing party should not be able to act as the gatekeeper to determine what information their adversary is entitled to have. As the court noted in *Chiron Corp. v. Genentech*, 179 F.Supp.2d 1182, 1186, parties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject.

Additionally, as the court pointed out in *Dunhall Pharm., Inc. v. Discus Dental*, 994 F.Supp. 1202, 1204, although the state of mind of the alleged infringer is the relevant inquiry in a willful infringement accusation, the standard for discovery is broader than that for admissibility. In this court's view, the cases that narrow the scope of the waiver of the attorney-client privilege and work-product immunity to communications between the attorney and the client overemphasize the standards for admissibility and fail to recognize that litigants are entitled to test the positions taken by adverse parties in discovery.

Quoting *Hoover Universal, Inc. v. Graham Packaging Corp.*, 44 USPQ2d 1596, 1598, 1996 WL 907737 (C.D.Cal.1996) the court observed:

> A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work-product doctrine. *Steelcase* over emphasizes the Federal Circuit's limitations on admissibility, and fails to take into account Rule 26(b)(1)'s broader reach at the discovery phase of the litigation. While negative evidence contained in the attorney's files may not ultimately reflect upon the client's state of mind, and will therefore not be admissible as evidence of willfulness, that evidence could very well lead to the discovery of relevant and admissible evidence of the client's state of mind that might not otherwise come to light. If the attorney's files contain evidence contradicting or questioning the opinion relied on by the client, the plaintiff has a right to know about such evidence in order to fully question defendants and their counsel regarding that evidence, disclosure to the client, and other related issues.

*Dunhall*, at 1204–05, quoting *Hoover* (internal citations omitted).

In *Frazier Ind. Co. v. Advance Storage Products*, 33 USPQ2d 1702, 1994 WL 761247 (C.D.Cal.1994) the court granted the plaintiff's motion to compel documents and answers to deposition questions in a patent infringement case where the defendant indicated it intended to rely upon oral advice given to it by counsel to defend against an accusation of willful infringement. The court noted that, although the state of mind of the infringer is at issue, that state of mind must be determined from all of the surrounding circumstances. Additionally, the *Frazier* court reasoned that where the attorney gave oral opinions "*Mushroom Assoc.* is the more closely analogous precedent" and that "this resolution is more compatible with the controlling Circuit precedent governing work product," citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992). There the Ninth Circuit held that opinion work-product was discover-

able where the mental impressions of counsel were at issue and the need for the material was compelling.

The cases which limit the scope of a waiver to communications between the attorney and client also ignore the fact that evidence in an attorney's file will not always clearly reflect whether its contents were communicated to the client. They also fail to recognize that the absence of materials in an attorney's file may be compelling evidence of the competency of the opinion and/or the adequacy of the inquiry on the subject matter of the defense. A litigant could manipulate the process by giving the attorney only favorable information, and directing that he or she only review the materials provided, effectively dictating what the opinion will be. Similarly, an attorney who reviews and discounts or disregards materials adverse to the client's position should not be able to hide those materials from discovery asserting he or she did not rely upon them in rendering his or her opinion. There is simply too much potential for abuse to preclude an adversary from conducting discovery in these areas.

In *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3rd Cir.1995) the court compelled a law firm to provide the entire file on work done leading up to an opinion letter, including backup documents that were not provided to the client, so that the reasonableness of the advice relied upon could be determined reasoning:

> The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice, whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.

Similarly, in *Government Guar. Fund of Finland v. Hyatt Corp.*, 177 F.R.D. 336, 343 (D.Vi.1997) the court held that a party who submitted its attorney's affidavit in opposition to a motion for summary judgment waived the attorney-client privilege with respect to matters asserted in the affidavit finding:

> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness.

The same rationale applies to the waiver of the work-product immunity. As the court held in *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 931–33 (N.D.Ca.1976), although attorneys' work-product is ordinarily protected, once a client decides to call the attorneys as witnesses, the work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth. The court wrote:

> Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of relevant work-product of these attorneys. Without discovery of the work-product, plaintiff will be unable to ascertain the basis and facts upon which the opinions of these wit-

nesses are based. This will undoubtedly impair plaintiff's ability for effective cross-examination on a crucial issue.

*Id.* at 931. *See also, Vaughan Furniture Co., Inc. v. Featureline Mfg., Inc.,* 156 F.R.D. 123, 128 (M.D.N.C.1994) where the court refused to quash a subpoena served on a patent law firm designated as an expert witness finding "[W]hen a party names its attorney as an expert witness, the witness must produce all documents considered by him or her in the process of formulating the expert opinion, including documents containing opinion." and *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 25 USPQ2d 1304, 1992 WL 442898 (N.D. CA 1992) (work-product of a patent attorney named as an expert witness is discoverable just as documents that any expert relies on to formulate an opinion are discoverable).

 Finally, although the court finds the defendant has waived the attorney-client privilege and work-product immunity on the subject matter of the defense of advice of counsel, that defense is limited to the advice provided by Mason and Fisher. The court will not compel defendant's current litigation counsel to produce work-product materials they have generated since taking over representation of the defendant from Mason. The work-product doctrine is aimed to protect the effectiveness of a lawyer's trial preparation by immunizing his or her materials from discovery. *Handgards, id.* at 930, citing *Kirkland v. Morton Salt Co.,* 46 F.R.D. 28 (N.D.Ga.1968); Note, *Developments in the Law–Discovery,* 74 Harv. L.Rev. 940, 1045 (1961).

The court has a duty to balance plaintiffs' need to conduct discovery with the right of the defendant, and its counsel, to retain the benefits of the lawyers' work for the client free from intrusion by opposing parties and their counsel. As the Supreme Court reasoned in *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947):

> Proper preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

 The court finds the reasoning of the District Judge in *Dunhall Pharm., Inc. v. Discus Dental, Inc., supra,* persuasive on the temporal limitation of the work-product waiver in a reliance on advice of counsel defense to willful patent infringement case. There, the court recognized that plaintiffs had a valid interest in discovering work-product related to the subject matter of the asserted defense, but balanced the defendant's counterveiling interests in protecting their work-product and found that "[O]nce the lawsuit is filed, the waiver of work-product protection ends. This temporal limitation flows from the enhanced interest in protecting against disclosure of trial strategy and planning." *Id.* at 1206. The court would ordinarily be inclined to impose a temporal limitation on the waiver at the point the lawsuit was filed in the absence of an allegation the defendant's willful infringement was ongoing. However, here, E'Lite designated its former litigation counsel as an expert witness. The opinion on which E'Lite intends to rely were not reduced to writing and are oral. Mason has been deposed and was unable to recall with any specificity what he reviewed, when he reviewed it, what he discussed with the client, and what his opinions were based on. The majority of Mason's deposition testimony was conclusory and unsupported by specifics. Under these circumstances, the court

finds defendant has waived the work-product immunity for Mason's file on the subject matter of the asserted defense, that is, evidence relating to willfulness, infringement, validity, and/or enforceability of the Patents-in-suit.

■ Fisher was retained after the lawsuit was filed, provided a written opinion, and was subsequently designated as an expert witness. His work product is discoverable just as documents that any expert relies upon in formulating opinions are discoverable.

### CONCLUSION

Here, E'Lite voluntarily interjected the advice of counsel defense into this case. By invoking the defense E'Lite placed its state of mind at issue. Plaintiffs are entitled to discovery of all communications from lawyer to client or from client to lawyer that relate to the validity, enforceability, or infringement of the Patents-in-suit. The defendant has waived its attorney-client privilege on the subject matter of its defense of reliance on advice of counsel. The court finds plaintiffs are also entitled to discovery of all documents that relate to, refer to, support, or form the basis for the opinions communicated by the lawyers relating to the validity, enforceability, or infringement of the Patents-in-suit.

E'Lite's deliberate interjection of the advice of counsel defense waived its attorney-client privilege as to all communications and documents relating to the advice. By designating its former litigation counsel as a witness to support its advice of counsel defense, E'Lite has waived the attorney-client privilege as to all of Mason's communications and documents relating to the advice he rendered on infringement, validity, and enforceability of the Patents-in-suit. Since Mason is being called as a witness to express his opinions in these areas, defendants have a particularized

and compelling need for the production of his work-product. Without discovery of his work-product, plaintiffs will be unable to ascertain the basis and facts upon which his opinions are based and will be impaired in their ability to effectively cross-examine on these critical issues.

Similarly, the court finds that, having designated Mr. Fisher as an expert witness to support its advice of counsel defense, E'Lite has waived its attorney-client privilege for all communications and documents relating to the advice he rendered on infringement, validity, and enforceability of the Patents-in-suit. Since Fisher is being called as a witness to express his opinions in these areas, defendants have a particularized and compelling need for the production of his work-product. Without discovery of his work-product, defendants will be unable to ascertain the basis and facts upon which his opinions are based and will be impaired in their ability to effectively cross-examine on these critical issues.

The court finds that this waiver of the attorney-client privilege and work-product immunity includes any evidence relating to the subject matter of the asserted defense, whether or not communicated to E'Lite. However, balancing plaintiffs' interests in discovering all work-product related to the subject matter of the asserted defense, and defendant's interests in protecting their current litigation counsel's work-product, the court will not extend the finding of waiver to materials generated by E'Lite's current litigation counsel. The court finds that current litigation counsel's work-product deserves a greater degree of protection and need not be produced.

For all of the foregoing reasons,

**IT IS ORDERED** plaintiffs' Motion to Compel Discovery (# 110) is GRANTED in part and DENIED in part as follows:

 1. Attorney Robert Mason shall be compelled to appear for a second

session of his deposition and answer questions to which work-product and/or attorney-client privilege objections were previously interposed in accordance with the provisions of this order.

2. Defendant shall produce the documents produced by Mr. Mason responsive to plaintiffs' subpoena duces tecum.

3. Defendant shall supplement its response to Request for Production Nos. 5, 10, 11, 14, 17, 19, and 20 in accordance with the scope of waiver of the attorney-client privilege and work-product immunity opinions contained in this order.

4. Defendant need not produce work-product of its current litigation counsel from the point in time the firm took over representation of E'Lite from Mr. Mason in this case, and need not produce a privileged document log for these materials.

5. In all other respects, the motion to compel is DENIED.